# KIRK v. McCALLISTER et al.

## No. A-11928. June 24, 1953.

### (259 P. 2d 325.)

Sid White, Oklahoma City, for petitioner.

Granville Scanland, Co. Atty., and John McPherren, Asst. Co. Atty., Oklahoma City, for respondents.

JONES, J. This habeas corpus proceeding presents for determination a question involving the interpretation of House Bill 243 of the 1947 Legislature which became a law on May 16, 1947, 2 O.S. 1951 §§ 737.1 to 737.13.

The petitioner, Finus Kirk, was charged by a verified complaint filed before Justice of the Peace Elmo McCallister of Oklahoma City, with "Offering for sale and selling uncandled eggs as "fresh eggs'." Subsequent to the filing of the complaint, the petitioner was arrested, restrained by the sheriff of Oklahoma county, and this action was filed to secure his release from restraint on the theory that the complaint did not charge a violation of the law on the part of the petitioner.

The act in question, generally referred to as "The Egg Law," consists of several sections. Those material to the determination of this case are the following sections:

Section 1. "*This Act shall be permissive only* and the rights and privileges herein conferred shall extend to producers of eggs and any person, firm or corporation buying or selling eggs for retail or wholesale purposes *who may elect to act within its provisions.*"

Section 3. "All shell eggs sold or offered for sale for human food, except eggs that have been candled or graded as hereinafter provided, shall be sold or

offered for sale only as uncandled or current receipt eggs with no other \* \* \* wording."

Section 4. "No eggs shall be sold or otherwise disposed of as candled eggs unless such eggs have been candled in accordance with the provisions of this Act and unless there has been affixed to the container thereof a candling certificate, which shall be furnished by the State Department of Agriculture at a rate not to exceed one-fourth (¼) cent for a container of one dozen eggs or less, one (1) cent for a container of more than 1 dozen eggs and not more than 15 dozen eggs, and two (2) cents for a container of more than 15 dozen eggs. Such candling certificate shall bear the license number of the seller and the date the eggs were candled. *Provided, however, that nothing herein shall be construed to make the candling of eggs compulsory.* Provided, further, that a candling certificate that has been affixed to a container of eggs shall be defaced or destroyed before any other eggs are placed in such container."

Section 5. "All candling required by the provisions of this Act shall be under the supervision of the State Department of Agriculture and shall consist of a careful examination, in a partially darkened room or place, of the whole egg by means of a candling light as defined in standards approved by the United States Department of Agriculture, or such other methods as shall be approved by the State Department of Agriculture."

Section 6. "No person shall offer for sale, sell or otherwise dispose of any shell eggs for human food as candled eggs or graded eggs unless he is the holder of an egg dealer's license issued by the State Department of Agriculture. Any person desiring an egg dealer's license shall make written application therefor to the State Department of Agriculture, which shall charge and collect One Dollar ($1.00) for the issuance or renewals of each such license. A separate license shall be required for each place of business and any license may be transferred subject to approval of the State Department of Agriculture. Each such license shall expire one (1) year after the date of its issuance or renewal. Any such license may be cancelled or suspended by the State Department of Agriculture upon failure of the holder thereof to comply with any of the provisions of this Act, or any rule or regulation prescribed hereunder, after notice thereof and an opportunity to be heard has been given to the holder."

Section 11. "Any person who violates any of the provisions of this Act shall be guilty of a misdemeanor and as punishment shall be fined in a sum not to exceed One Hundred Dollars ($100.00)." (Emphasis supplied.) Laws 1947, p. 13.

A hearing was held before this court and at the hearing it was stipulated that the petitioner had been engaged in selling eggs at the Farmer's Market in Oklahoma City for several years, that he did not elect to come under the terms of the act in question, was not possessed of a license issued by the State Department of Agriculture, but his alleged offense consisted of having a quantity of eggs for sale at the Public Market with the written inscription on a cardboard above the eggs as follows: "Fresh eggs." There was no contention on the part of the prosecution that the petitioner was selling eggs unfit for human consumption or that he had mislabeled them, the sole basis for the prosecution being that defendant had violated section 3 of the act hereinabove quoted, which according to the state's theory, prohibited all persons from selling eggs that had not been candled or graded as provided in the act with any other descriptive label than 'uncandled or current receipt eggs".

It appears plain to us from a consideration of section 1 of the act that said act and all of its provisions and terms apply only to persons who elected to come under its provisions. It is what is generally termed as permissive legislation. Those persons not desiring to partake of the benefits of the act would not be bound by its terms unless electing to do so. Those desiring the benefits of the act could be licensed by the payment of a small fee and could candle and grade their eggs in accordance with the rules and regulations of the Department of

Agriculture, and so advertise their eggs. The benefits conferred by the act were substantial, but the act carried with it not only benefits, but specific obligations and limitations were prescribed by certain sections of the act pertaining to the sale of inferior eggs, uncandled eggs, or those unfit for human consumption.

We recognize that there might be a need for general legislation to protect the consuming public from the purchase of eggs unfit for human consumption, but it is apparent that the Legislature, while agreeing with the worthy aims of the legislation proposed by the Department of Agriculture, did not wish to place an undue restraint or limitation upon their farmer constituents by making the terms of the act apply to them unless the egg producer expressly elected that it should do so.

It is established law that in the interpretation of penal statutes the court should not extend its terms to embrace acts or conduct not clearly included within the statute. Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659; State v. Noble, 54 Okla. Cr. 391, 22 P. 2d 931; Little v. State, 55 Okla. Cr. 420, 32 P. 2d 94.

The criminal complaint filed against the accused, not alleging that the accused had elected to come within the terms of the act, wholly failed to state an offense. Under the stipulation of facts upon which this habeas corpus matter was submitted to this court, it would be impossible to amend the complaint so as to charge an offense. Under such circumstances, the complaint being invalid on its face and not susceptible to amendment so as to charge an offense, the justice of the peace court was wthout authority to hear evidence on said complaint or pronounce judgment of conviction for violation of the act herein involved.

The writ of habeas corpus is issued as prayed.

POWELL, P. J., and BRETT, J., concur.