2006 OK 16

**CITY OF ENID, Oklahoma, an Oklahoma Municipal Corporation, Plaintiff/Appellee,**

v.

**PUBLIC EMPLOYEES RELATIONS BOARD and American Federation of State, County and Municipal Employees, a/k/a AFSCME OK Organizing Committee, Defendants/Appellants.**

No. 101,729.

Supreme Court of Oklahoma.

March 14, 2006.

Tony G. Puckett, Ronald T. Shinn, Jr., McAfee & Taft, Oklahoma City, OK, for appellee, City of Enid, Oklahoma.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Rinehart, Senior Assistant Attorney General, Oklahoma City, OK, for co-appellant, Public Employees Relations Board.

James R. Moore, Sue Wycoff, James R. Moore & Associates, Oklahoma City, OK, for appellant, American Federation of State, County and Municipal Employees.

Diane Pedicord, Sue Ann Nicely, Oklahoma Municipal League, Oklahoma City, OK, for Amicus Curiae Oklahoma Municipal League.

Larry Derryberry, Caleb J. Muckala, Derryberry Quigley Solomon & Naifeh, Oklahoma City, OK, for Amicus Curiae Association of County Commissioners of Oklahoma.

PER CURIAM.

¶ 1 The issue before us concerns the constitutionality of the Oklahoma Municipal Employee Collective Bargaining Act (hereinafter the Act).[1] We hold that the Act is a general law of state-wide concern that contains a proper and legitimate classification of municipalities with a population greater than 35,000. This population classification bears a reasonable relationship to the Act's objective codified at 11 O.S.Supp.2005, § 51–201, "to promote orderly and constructive employment relations between municipal employers and their employees." The Act grants municipal employees of these municipalities the right to organize and choose representation for collective bargaining, and requires these municipal employers to recognize, negotiate and bargain with the employees' chosen representatives.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 The legislature passed the Oklahoma Municipal Employee Collective Bargaining Act during its 2004 session. Administered by the Public Employees Relations Board (PERB)[2], the Act defines municipal employ-ers as municipalities[3] with populations greater than 35,000.[4] The parties agree that it currently applies to eleven municipalities in Oklahoma. The classification remains fluid. When municipalities reach the requisite number of residents, the Act applies.

¶ 3 Appellant, American Federation of State, County, and Municipal Employees a/k/a AFSCME OK Organizing Committee, (hereinafter Union) requested certification from PERB to represent the City of Enid's qualifying employees when the Act became effective (November 1, 2004). PERB gave notice of Union's request to the City of Enid and directed the City of Enid to post the notice on November 4, 2004. PERB's emergency rules provide it must certify Union as representative of the City of Enid's municipal employees unless PERB receives a request from another union within fifteen days. On November 19, 2004, the City of Enid filed an action against PERB and Union for a temporary restraining order, temporary and permanent injunctions, and declaratory judgment that the Act was special legislation which violated Okla. Const. art. 5, §§ 46 and 59, and also violated art. 18, § 3(a).

¶ 4 The district court granted a temporary restraining order on November 22, 2004. Subsequently, the City of Enid filed a motion for summary judgment that the court ultimately granted. The basis for summary judgment was the court's determination the Act's classification of municipalities with populations greater than 35,000 for collective bargaining purposes was arbitrary and thus constituted a special law in violation of art. 5, §§ 46 and 59. The court reasoned that it was not impossible to design a general law, and issued a permanent injunction against PERB. We retained the appeal. Oral argument was heard on May 10, 2005.

## II. STANDARD OF REVIEW

¶ 5 The issue of the Act's constitutionality is a legal determination. "An ap-

1. 2004 O.S.L. ch. 62, codified at 11 O.S.Supp. 2005, §§ 51–200 et seq.

2. 11 O.S.Supp.2005, § 51–104.

3. For purposes of the Oklahoma Municipal Code, a "municipality" is defined as any incorporated city or town. 11 O.S.2001, § 1–102(5).

4. 11 O.S.Supp.2005, § 51–202(12).

pellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley v. Brown*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie*, 1994 OK 3, ¶ 3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris*, 1980 OK 52, ¶ 9, 610 P.2d 782, 785. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is *de novo*. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, n. 1, 935 P.2d 319, 321, n. 1; *Manley*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d at 456, n. 30. Accordingly, our standard of review regarding the trial court's order in the instant case is *de novo*. The burden is on the City of Enid, the entity challenging the Act, to show beyond a reasonable doubt that the Act is unconstitutional. *See, Hamilton v. City of Oklahoma City*, 1974 OK 109, ¶ 15, 527 P.2d 14, 17, citing and quoting *Isaacs v. Oklahoma City*, 1966 OK 267, 437 P.2d 229.

Otherwise, we will not disturb the presumption of the Act's validity.

## III. ISSUES ON APPEAL

¶ 6 The City of Enid contends the Act is a special law in violation of Okla. Const., art. 5, § 46, and is unconstitutional under art. 18, § 3(a), which allows charter cities autonomous self-governance under the home rule doctrine. It also argues the Act creates a class that lacks a reasonable relation to the Act's subject, in violation of Okla. const., art. 5, § 59. The district court did not address the art. 18, § 3(a) issue in its summary judgment order, from which the instant matter arises, as it was unnecessary for the district court to reach that issue because that court found the Act unconstitutional as a special law.

### A. Oklahoma Const. art. 5, § 46

¶ 7 The question for an art. 5, § 46 inquiry is whether the statute at issue is a special or general law. Section 46 enumerates twenty-eight areas in which the legislature is prohibited from passing local or special laws, unless otherwise allowed by another provision in the Oklahoma Constitution.[5] As pertinent to our analysis here-

---

5. § 46. Local and special laws on certain subjects prohibited

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

The creation, extension, or impairing of liens;

Regulating the affairs of counties, cities, towns, wards, or school districts;

Changing the names of persons or places;

Authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;

Relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;

Vacating roads, town plats, streets, or alleys;

Relating to cemeteries, graveyards, or public grounds not owned by the State;

Authorizing the adoption or legitimation of children;

Locating or changing county seats;

Incorporating cities, towns, or villages, or changing their charters;

For the opening and conducting of elections, or fixing or changing the places of voting;

Granting divorces;

Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;

Changing the law of descent or succession;

Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;

Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;

Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;

Fixing the rate of interest;

Affecting the estates of minors, or persons under disability;

Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;

Exempting property from taxation;

Declaring any named person of age;

Extending the time for the assessment or collection of taxes, or otherwise relieving any asses-

in, the prohibition concerns the regulation of the affairs of municipalities.

■■■ ¶ 8 Since the Act concerns the regulation of certain labor issues of larger municipalities, we determine that the Act indeed concerns one of the twenty-eight subjects set forth in § 46. We must determine whether the legislation at issue is a special or local law. *See e.g., Grant v. Goodyear Tire & Rubber Co.,* 2000 OK 41, ¶ 5, 5 P.3d 594, 597, citing *Reynolds v. Porter,* 1988 OK 88, ¶ 14, 760 P.2d 816, 822, *Guthrie Daily Leader v. Cameron,* 1895 OK 71, ¶ 38, 41 P. 635, 639. A general law "relates to persons or things as a class rather than relating to particular persons or things." *Grant,* 2000 OK 41, ¶ 5, 5 P.3d at 597, citing *Reynolds,* 1988 OK 88, ¶ 14, 760 P.2d at 822. General laws need not operate upon every locality in the state, "but must apply equally to all classes similarly situated, and apply to like conditions and subjects." *Grable v. Childers,* 1936 OK 273, ¶ 6, 56 P.2d 357, 360. A special law relates to "a part of the entire class of similarly affected persons" and "separate[s] [that part] for different treatment." *Grant,* 2000 OK 41, ¶ 5, 5 P.3d at 597, citing *Reynolds,* 1988 OK 88, ¶ 14, 760 P.2d at 822.

¶ 9 Under *Reynolds,* we identify the class by tests developed for each particular subject enumerated in art. 5 § 46. *Reynolds,* 1988 OK 88, ¶ 18, n. 36, 760 P.2d at 823, n. 36. This Court recognized in *Reynolds* that civil actions may be classified into specific categories of tort actions of a similar nature for statute of limitation purposes, and that doing so would not *a fortiori* constitute a special or local law that would violate the strictures contained in § 46. *See, Reynolds,* 1988 OK 88, ¶ 18, 760 P.2d at 823. The Court stated at footnote 36 that "[t]he test we adopt for identifying the class in measuring the validity of a civil action's limitation by the strictures in § 46 is not necessarily applicable to other subjects enumerated in that section." *Reynolds* did not concern a popu-

lation-based statute, and in no way precludes the classification of cities into similarly situated municipalities based on population when the legislature, in its wisdom, has a legitimate, reasonable and rational reason to do so.

¶ 10 The City of Enid asks us to interpret art. 5, § 46 in regard to the collective bargaining Act involved here, as an absolute bar, prohibiting legislative regulation of some but not all municipalities. Such an interpretation is unwarranted and is not consistent with our previous case law as to what is or is not considered a general law.

¶ 11 In *Edmonds v. Town of Haskell,* 1926 OK 289, ¶ 9, 247 P. 15, 17–18, *dismissed for want of jurisdiction,* 273 U.S. 647, 47 S.Ct. 246, 71 L.Ed. 821 (1926), the Court stated, "The act in question cannot be said to be more than a reasonable and fair classification of towns in proportion to their population, and a grant of the same privileges to all towns of the same class." The Court held that express authority existed pursuant to art. 18, § 1, for creation of a statute for cities with populations in excess of 1,000 to pave streets and make assessments for that. *Edmonds,* 1926 OK 289, ¶ 8, 247 P. at 17.

■■■ ¶ 12 When we analyze § 46 along with the language of art. 18, § 1 under the teaching of *Edmonds,* we must invoke the "except as otherwise provided" language contained in § 46 [6], and recognize that not all classification in proportion to population is prohibited. In addressing a claim with significant factual similarities to the instant case, this Court stated In *Hamilton v. Oklahoma City,* 1974 OK 109, 527 P.2d 14, the City of Oklahoma City challenged the constitutionality of the Oklahoma Governmental Tort Liability Act (11 O.S.1971, §§ 1751–1766), which provided that cities with over 200,000 population would be liable for their torts arising out of their governmental functions. Oklahoma City and Tulsa were the

---

sor or collector of taxes from due performance of his official duties, or his securities from liability;
Giving effect to informal or invalid wills or deeds;
Summoning or impaneling grand or petit juries;
For limitation of civil or criminal actions;

For incorporating railroads or other works of internal improvements;
Providing for change of venue in civil and criminal cases.

**6.** *See* fn. 5, *supra.*

only cities covered by this legislation. The *Hamilton* Court observed:

"On the other hand, size may be an important factor in any particular classification scheme based on population. This Court has long recognized that cities having a larger population may have problems much different from less populated counties, insofar as many topics of legislation are concerned."

*Hamilton,* 1974 OK 109, ¶ 13, 527 P.2d at 16.

¶ 13 Our next inquiry regarding whether the Act is a general law, as distinguished from a local or special law, concerns whether there is a proper and legitimate classification, whether the classification is arbitrary or capricious, or whether it bears a reasonable relationship to the object to be accomplished. *Sanchez v. Melvin,* 1966 OK 116, ¶ 14, 418 P.2d 639, 641. "[A] law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted." *Grimes v. Oklahoma City,* 2002 OK 47, ¶ 10, 49 P.3d 719, 723, citing *Anderson v. Walker,* 1958 OK 297, ¶ 16, 333 P.2d 570, 574. Indeed, the class may be very limited, and there may be but one of the class. *Guthrie Daily Leader v. Cameron,* 1895 OK 71, ¶ 41, 41 P. 635, 639. The key is that the law be general in its application and embrace all of the given class, as opposed to specific in its application to a particular person or thing. *Guthrie Daily Leader,* 1895 OK 71, ¶ 41, 41 P. at 639. In the legislation before us, the Act applies statewide through its application to similarly-situated municipalities. It does not apply to one particular municipality, to the exclusion of others. Its application to the class of municipalities over 35,000 is uniform.

¶ 14 Two years after statehood, in *Burks v. Walker,* 1909 OK 317, 109 P. 544, the Court rejected a constitutional challenge to a legislative enactment creating a superior court in each county with a population greater than 30,000 that contained at least one city with a population of 8,000 or more. In holding the statute was not a special law the Court wrote:

"In order for a law to be general in its nature and to·have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. * * * But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnish[es] a practical and real basis for discrimination."

*Burks,* 1909 OK 317, ¶ 23, 109 P. at 549.

[13] ¶ 15 Thus, in *Burks,* the Court created a two-part, rational-relationship test to determine whether a population-based classification was a special or general law. The Court has used this test in numerous cases involving constitutional challenges to population-based legislation under Okla. Const., art. 5, §§ 46 and 59.[7] It is the appropriate test for today's inquiry, as well.

7.  *Hatfield v. Garnett,* 1915 OK 70, ¶ 18, 146 P. 24; *Board of County Commissioners v. Beaty,* 1918 OK 89, ¶ 7, 171 P. 34; *Board of Commissioners of Grady County v. Hammerly,* 1921 OK 356, ¶ 25, 204 P. 445; *Key v. Donnell,* 1924 OK 996, ¶ 5, 231 P. 546; *Chicago R.I. & P. Ry. Co. v. Carroll,* 1925 OK 1002, ¶ 8, 245 P. 649; *Edmonds v. Town of Haskell,* 1926 OK 289, ¶¶ 8–9, 247 P. 15; *Pointer v. Town of Chelsea,* 1927 OK 9, ¶¶ 7–8, 257 P. 785; *Roberts v. Ledgerwood,* 1928 OK 723, ¶¶ 7–10, 272 P. 448; *Hudgins v. Foster,* 1928 OK 243, 267 P. 645; *Gulager v. Bickford,* 1930 OK 368, ¶ 11, 293 P. 209, *Caddo County v. Chicago R.I. & P. Ry. Co.,* 1932 OK 69, 7 P.2d 900; *Crawford Co. Treas. v. Smith,* 1933 OK 158, ¶¶ 9–15, 19 P.2d 964; *Thompson v. Stanley,* 1938 OK 488, ¶ 14, 83 P.2d 386; *Wilkinson v. Hale,* 1939 OK 11, ¶ 10, 86 P.2d 305; *Lowden v. Oklahoma County,* 1940 OK 134, ¶¶ 6–9, 100 P.2d 448; *Williams v. Hutchens,* 1940 OK 266, ¶¶ 6–8, 102 P.2d 841; *Bell v. Crum,* 1940 OK 413, ¶¶ 17–35, 106 P.2d 518; *Oklahoma City v. Excise Bd. Of Oklahoma County,* 1943 OK 311, ¶ 17, 141 P.2d 805; *Haas v. Holloman,* 1958 OK 174, ¶¶ 14–16, 327 P.2d 655; *Hamrick v. George,* 1962 OK 247, ¶¶ 26–32, 378 P.2d 324; *Williams v. Johnson,* 1964 OK 188, ¶ 13, 396 P.2d 518; *Elias v. City of Tulsa,* 1965 OK 164, ¶¶ 10–12, 408 P.2d 517; *Sanchez v. Melvin,* 1966 OK 116,

¶ 16 The Act at issue herein concerns the class of municipalities in the state of Oklahoma with populations greater than 35,000. Before we can deem this legislation unconstitutional, we must determine that the classification of municipalities by population for purposes of municipal employees' collective bargaining rights is clearly capricious, arbitrary, and wholly unrelated to the object of the Act. As stated above, the burden was and is on the City of Enid to show that such is the case. The City of Enid has failed to make such a showing. In contrast, the evidence in this summary judgment record supports the reasonableness of the classification. This evidence includes experts' affidavits regarding the following:

1. Smaller municipalities typically have fewer layers of management. Employees thus have a greater opportunity to deal with management directly. Larger municipalities have a more intricate upper management structure, and employees seldom have contact with bosses. Employees of the larger municipalities have a greater need for an intermediary group to act on their behalf.

2. Smaller municipalities have fewer necessary resources to engage effectively in collective bargaining, whereas larger ones are more likely to have a "critical mass of employees" from which to find individuals to speak in their behalf.

3. Smaller municipalities have smaller budgets, creating special pressure to oppose collective bargaining and avoid demands for higher wages.

4. Larger municipalities are more likely to have personnel departments and legal staff at their disposal to facilitate the negotiation process, a process that requires a certain level of competence, knowledge, and time to learn about issues and options involved in collective action. Smaller municipalities often lack these personnel departments and legal staff. Accordingly, any bargaining would be less manageable and more cumbersome for smaller municipalities and their employees.

¶ 17 Oklahoma's first legislature contained members who knew the Constitution.[8] At this time, it was common to classify cities based upon population, and many statutes of the first legislature exemplify this. Cities of the "First Class" had a population of 2,000 or more. See, Oklahoma General Statutes 1908, § 699. Legislation determined the salaries of city officials based upon population, such as the city attorney, "police judge," and treasurer. See, e.g., Oklahoma General Statutes 1908, § 839, concerning salaries for those officials in cities with a population in excess of 25,000. Statutes also concerned public contracts of cities with a population in excess of 25,000. See, e.g., Oklahoma General Statutes 1908, §§ 844–847. More recently, this Court upheld the constitutionality of urban renewal laws that applied to municipalities with populations in excess of 100,000, in *Isaacs v. City of Oklahoma City,* 1966 OK 267, 437 P.2d 229, *cert. denied,* 389 U.S. 825, 88 S.Ct. 63, 19 L.Ed.2d 79 (1967). Classification of municipalities by population is one of those classifications historically recognized as necessary and appropriate in the state of Oklahoma, for purposes of legislation.

¶ 18 In the case at bar, we cannot say that the legislature's population classification of 35,000 is arbitrary or capricious. We determine that a municipality's population is closely related to the object sought to be obtained by the Act. The Act does not violate Oklahoma Const. art. 5, § 46.

### B. Oklahoma Const. art. 5, § 59

¶ 19 Regarding Oklahoma Const. art. 5, § 59, we must determine whether any

---

¶ 17, 418 P.2d 639; *Isaacs v. City of Oklahoma City,* 1966 OK 267, ¶ 33, 437 P.2d 229; *State ex rel. Nesbitt v. District Court of Mayes County,* 1967 OK 228, ¶ 7, 440 P.2d 700 (overruled on other grounds by *Palmer v. Belford,* 1974 OK 73, 527 P.2d 589); *Tulsa Exposition & Fair Corp. v. Board of County Commissioners,* 1970 OK 67, ¶¶ 9–23, 468 P.2d 501; *Hamilton v. City of Oklahoma City,* 1974 OK 109, ¶¶ 11–18, 527 P.2d 14; *Maule v. Independent School District No. 9 of Tulsa County,* 1985 OK 110, ¶ 12, 714 P.2d 198.

8. The Speaker of the House in Oklahoma's First Legislature was William H. Murray, former President of the Oklahoma Constitutional Convention. E. McReynolds, A. Marriott, and E. Faulconer, *Oklahoma: The Story of its Past and Present,* 314 (1961); 2 W. Murray, *Memoirs of Governor Murray and the True History of Oklahoma,* §§ 173–236 (1945).

part of the class, (municipalities with a population greater than 35,000) is separated for different treatment in violation of that constitutional provision. Section 59 provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." We find no such evidence. The Act grants the same privileges to all municipalities of the same class; it does not violate Oklahoma Const. art. 5, § 59.

## C. Oklahoma Const. art. 18, § 3(a)

¶ 20 Oklahoma Const. art. 18, § 3(a) allows charter cities autonomous self-governance under the home rule doctrine. The issue that the Act is unconstitutional under art. 18, § 3(a), is not included in the "Issues Raised on Appeal" filed with the Court by the appellants in their respective petitions in error. The trial court based its decision that the Act was unconstitutional on art. 5, §§ 46 and 59, and therefore the appellants addressed those issues. The appellee did, however, observe in its response to the petition in error of PERB, that the constitutionality of the Act under art. 18, §§ 1–3 was raised before the trial court, and the City of Enid asserted in its response that the Act was unconstitutional under art. 18 because it violates the home rule doctrine. If this Court fails to address this issue the trial court would have to determine the constitutionality of the Act based on the home rule doctrine when this cause is remanded.

¶ 21 This Court is generally free to grant corrective relief on any applicable legal theory dispositive of the case and supported by the record when the issue is one of public law. *State v. Torres*, 2004 OK 12, ¶ 7, 87 P.3d 572, 578. "[W]here questions of public policy or widespread public interest are involved an appellate court may review a cause on a theory not presented in the trial tribunal." *Barks v. Young*, 1977 OK 81, ¶ 7, 564 P.2d 228, 229, citing *Special Indemnity Fund v. Reynolds*, 1948 OK 14, 188 P.2d 841. In the context of the case now before this Court, a public law issue relates to the organization of the state in its political or sovereign capacity. The laws concerning the balance of the power between the legislature and the municipalities fall within the body of law known as "public law." Accordingly, we will decide the home rule issue.

¶ 22 Provisions of a city charter that relate to merely municipal matters, and which are adopted and approved in accordance with constitutional provision, supersede all conflicting laws of the state. *Pitts v. Allen*, 1928 OK 275, ¶ 49, 281 P. 126, 132. The test of whether or not an act of the legislature impermissibly interferes with the charter of a municipality is resolved by determining if the act relates to purely a matter of municipal and local concern or if it involves matters of the state at large, or affects its people generally. *Lackey v. State*, 1911 OK 270, ¶ 20, 116 P. 913, 918.

¶ 23 In *Midwest City v. Cravens*, 1975 OK 22, 532 P.2d 829, Midwest City sought injunctive relief against the Public Employees Relation Board to prevent the Board from exercising jurisdiction over the City. The City had refused to negotiate the salary portion of the employment contract with the Midwest City Police Department on the grounds that it called for a reclassification of police personnel, which the City claimed was its sole responsibility under the City's charter. The Fraternal Order of Police, bargaining agent for the Midwest City Police Department, filed a charge with the Public Employees Relation Board against the City, asserting that the City had engaged in unfair labor practices contrary to the Firefighters' and Policemen's Arbitration Law. This Court held that the Legislature had created a vehicle by which the firefighters and police officers could discuss their grievances and terms and conditions of their employment with municipal authorities, but the municipal authorities, under the home rule doctrine, retained the right to make the final decision on all issues presented and discussed. *See Midwest City*, 1975 OK 22, ¶ 30, 532 P.2d at 833.

¶ 24 This Court cited 11 O.S.1971, § 548.2, which provided that the legislature had declared to be the public policy of this state to accord the firefighters and police officers of any city, town or municipality all the rights of labor, and then the Court cited § 548.4 that specifically referred to the right to bar-

gain collectively. *Midwest City*, 1975 OK 22, ¶ 6, 532 P.2d at 831. The Court observed that the Legislature had determined it was of state-wide concern that the firefighters and police officers be accorded the privilege of communicating with their respective employers with a collective voice. The Court agreed and held the Firefighters' and Policemen's Arbitration Law, as construed by the Court, did not contravene Art. 18, § 3 of our Constitution. *Midwest City*, 1975 OK 22, ¶¶ 35, 36, 532 P.2d at 834.

¶ 25 This Court observed in *City of Tulsa v. Public Employees Relations Bd.*, 1990 OK 114, ¶ 11, 845 P.2d 872, 875, that *Midwest City declared Art. 18, § 3 was not offended by the statutory requirement of collective bargaining because it was a matter of state-wide, rather than purely municipal, concern.* Although the City of Enid would have this Court distinguish these cases from this present cause, we note, as we did in *Midwest City*, that the Legislature has determined promoting orderly and constructive collective bargaining between municipal employers and their employees is a matter of public policy. 11 O.S.Supp.2005, § 51–201, 2004 Okla.Sess. Laws, ch. 62, § 2. We agree and hold the matter is one of state-wide concern and does not contravene Art. 18, § 3.

## IV. CONCLUSION

¶ 26 Under the evidence in the record before us, we determine that the Act's population classification is not arbitrary or capricious. It is rationally related to the stated purpose of the legislation. We further determine that the Act grants the same privileges to all municipalities of the same class. It manifests uniform application to all class members. Accordingly, we hold that the Oklahoma Municipal Employee Collective Bargaining Act is constitutional under Okla. Const. art. 5, §§ 46 and 59, and art. 18, § 3(a).

SUMMARY JUDGMENT ORDER OF DISTRICT COURT REVERSED. CASE

REMANDED WITH DIRECTIONS TO ENTER JUDGMENT IN FAVOR OF THE PUBLIC EMPLOYEES RELATIONS BOARD AND THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES.

WINCHESTER, V.C.J., LAVENDER, HARGRAVE, KAUGER, EDMONDSON, JJ., concur.

WATT, C.J., OPALA, TAYLOR, COLBERT, JJ., dissent.

EDMONDSON, J., Concurring.

¶ 1 The Constitution and our previous opinions support the Court's analysis, and I write separately to provide a more detailed explanation why the Court's opinion is correct.

¶ 2 The Oklahoma Constitution states that a statute may be classified as a "general law" or a "special law." When the Legislature has created an *alleged* special law in violation of Art. 5 § 59, the Court has determined whether the classification was reasonable. If the law is reasonable it is a *general* law, not a constitutionally allowed special law. Article 5 § 46 also prohibits special laws. The Court has used its § 59 opinions defining a special law when defining a special law for the purpose of § 46.[1] For the purpose of the City's Article 18 claim, the Court is required to balance the interests affected by the matter under consideration. I conclude that the balance tips against the City and that the Act does not violate Article 18 § 3.

## I. Sections 46 and 59 of the Constitution

¶ 3 The statute before us states that it applies to municipalities with "a population greater than thirty-five thousand (35,000) persons...."[2] Is this statute an unconstitutional special or local law? It is not, and our Constitution has three provisions—Art. 5 §§ 32, 46, and 59—which support this conclusion.

---

1. There is no anomaly in the Constitution. A proposed special law prohibited by § 59 may be made constitutional by the Legislature during the enactment process (Art. 5 § 32), while a special law prohibited by § 46 may not be enacted.

2. 11 O.S.Supp.2004 § 51–202(12).

¶4 Our Constitution states that the Legislature should enact a general law, if possible, as opposed to a special law:

Laws of a general nature shall have uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

Okla. Const. Art. 5 § 59. It states in Article 5, § 46, that the Legislature may not create a local or special law authorizing activities that are listed therein.[3]

## II. The Origins of Article 5 §§ 32, 46 and 59.

¶5 A former Chief Justice of this Court notes the origin of Art. 5 § 46. R.L. Williams, *The Constitution of Oklahoma and Enabling Act: Annotated With References to the Constitution, Statutes and Decisions,* Art. 5 § 46 (2nd ed.1941).[4] He notes that § 46 was derived from a federal statute that applied to Oklahoma Territory. *Id., citing, Guthrie Daily Leader v. Cameron,* 1895 OK 71, 41 P. 635. That same statute was explained by the United States Supreme Court:

That act [Act of July 30, 1886, c. 818, § 1, 24 Stat. 170], among other things, *provides that, where a general law can be made applicable, no special law shall be enacted in any of the territories of the United States by the territorial legislatures thereof; and it also provides that the territorial legislatures shall not pass local or special laws in any of the cases therein enumerated,* among which is a law to regulate the practice in courts of justice. Both of these

---

3. Okla. Const. Art. 5 § 46:

Local and special laws on certain subjects prohibited.

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

The creation, extension, or impairing of liens;

Regulating the affairs of counties, cities, towns, wards, or school districts;

Changing the names of persons or places;

Authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;

Relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;

Vacating roads, town plats, streets, or alleys;

Relating to cemeteries, graveyards, or public grounds not owned by the State;

Authorizing the adoption or legitimation of children;

Locating or changing county seats;

Incorporating cities, towns, or villages, or changing their charters;

For the opening and conducting of elections, or fixing or changing the places of voting;

Granting divorces;

Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;

Changing the law of descent or succession;

Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;

Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;

Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;

Fixing the rate of interest;

Affecting the estates of minors, or persons under disability;

Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;

Exempting property from taxation;

Declaring any named person of age;

Extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability;

Giving effect to informal or invalid wills or deeds;

Summoning or impaneling grand or petit juries;

For limitation of civil or criminal actions;

For incorporating railroads or other works of internal improvements;

Providing for change of venue in civil and criminal cases.

4. This Court has relied upon Justice Williams' annotations for identifying the sources for various sections of the Oklahoma Constitution. *See, e.g., Sommer v. Sommer,* 1997 OK 123, ¶9, 947 P.2d 512, 514; *Riley v. Brown and Root, Inc.,* 1992 OK 114, 836 P.2d 1298, 1300. An annotation also has been cited for identifying a purpose for a constitutional provision. *Trustees', Executors' & Securities Ins. Corp. v. Hooton,* 1915 OK 1059, 157 P. 293, 297. However, the limited nature of Williams' work is usually insufficient as an *exclusive source* for determining the full intent of the Constitutional Convention and the people who thereafter ratified the Constitution. *Immanuel Baptist Church v. Glass,* 1972 OK 79, 497 P.2d 757, 758.

provisions are said to have been violated in the passage of the act in question.

*Guthrie Nat. Bank v. City of Guthrie,* 173 U.S. 528, 533, 19 S.Ct. 513, 43 L.Ed. 796 (1899), (citation and emphasis added). The Act of July 30, 1886, c. 818, 24 Stat. 170, contains seven sections on various topics with § 1 of that Act devoted to prohibiting territorial legislatures from enacting special or local laws.[5] Section 1 of the Act contained the language subsequently enacted *in both § 46 and § 59 of our Constitution.*

¶ 6 An old rule of statutory construction states that "Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere, unless it clearly appears from the whole statute that it was the intention of the Legislature to use it in a different sense." *Walton v. Donnelly,* 1921 OK 258, 201 P. 367, 370. The Framers of our Constitution knew this rule and knew that a "special law" in the federal statute did not have different definitions in the same section of that statute when they used it to create § 46 and § 59.

¶ 7 The federal statute was created in 1886,[6] and reflected reaction against prior legislative abuses of power in creating rights or privileges for less than everyone in the population. Relating to municipalities, in 1893 one author explained that state legislatures "have more and more interfered in matters relating exclusively to subdivisions of the state,—often against the express desire of these subdivisions." Amasa M. Eaton, *Recent State Constitutions,* 6 Harv. L.Rev. 109, 122 (1892). Prohibiting local or special laws was popular in new and amended state constitutions during this era.[7]

---

5. The Act of July 30, 1886, c. 818, § 1, 24 Stat. 170, (with emphasis added) states:

   **CHAP. 818.—An act to prohibit the passage of local or special laws in the Territories of the United States, to limit Territorial indebtedness, and for other purposes.**

   *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the legislatures of the Territories of the United States now or hereafter to be organized **shall not pass local or special laws in any of the following enumerated cases,** that is to say:

   Granting divorces
   Changing the names of persons or places.
   Laying out, opening, altering, and working roads or highways.
   Vacating roads, town-plats, streets, alleys, and public grounds.
   Locating or changing county seats.
   Regulating county and township affairs.
   Regulating the practice in courts of justice.
   Regulating the jurisdiction and duties of justices of the peace, police magistrates, and constables.
   Providing for changes of venue in civil and criminal cases.
   Incorporating cities, towns, or villages or changing or amending the charter of any town, city, or village.
   For the punishment of crimes or misdemeanors.
   For the assessment and collection of taxes for Territorial, county, township, or road purposes.
   Summoning and impaneling grand or petit jurors.
   Providing for the management of common schools.
   Regulating the rate of interest on money.
   The opening and conducting of any election or designating the place of voting.
   The sale or mortgage of real estate belonging to minors or others under disability.
   The protection of game or fish.
   Chartering or licensing ferries or toll bridges.
   Remitting fines, penalties, or forfeitures.
   Creating, increasing, or decreasing fees, percentage, or allowances of public officers during the term for which said officers are elected or appointed.
   Changing the law of descent.
   Granting to any corporation, association, or individual the right to lay down railroad tracks, or amending existing charters for such purpose.
   Granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever.
   **In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial legislatures thereof.**

6. Act of July 30, 1886, c. 818, § 1, 24 Stat. 170, *codified at* 48 U.S.C. § 1471, *repealed by* Act of Dec. 8, 1983, Pub.L. 98–213 § 16(w), 97 Stat. 1463. 48 U.S.C.A. § 1471 (West 2003), (Historical and Statutory Notes).

7. Charles C. Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* 8 (1894), (until the creation of the 1886 federal act no adequate restrictions were imposed upon special or local legislation in the territories, but states admitted to the Union in the thirty-year period prior to 1894 contained provisions prohibiting, in differing degrees, special or local laws). *See also,* G. Alan Tarr, *Understanding State*

¶ 8 States that prohibited all special and local laws discovered that some special and local laws were needed, and some states then created constitutional provisions to allow enactment of special and local laws if pre-enactment notice were given by the legislature that it intended to enact such laws. James Q. Dealy, *Growth of American State Constitutions: From 1776 to the End of the Year 1914,* 225–226 (1915), (reprint 1972). The Oklahoma Constitution provides this procedure in Art. 5 § 32.[8]  But with this power to enact special and local laws upon notice to the people, the people withdrew certain subjects from the Legislative power to enact special and local laws even if notice were provided.[9]

¶ 9 What are the general, local, and special laws prohibited by constitutions during this era?  One author stated that the phrase "general law" in state constitutions was not capable of a simple and exact definition. Charles C. Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* 21–22 (1894).  Typically, courts would state that a general law was *not* designed for particular persons, because a law designed for particular persons is a prohibited special law.  *Id.* at 22.  Additionally, they would state that a general law is *not* designed for particular localities, because a law designed for particular localities is a prohibited local law.  *Id.* at 22.  But courts of this era also recognized that a definition stating "what a general law is not" could not be sufficient, by itself, and could not be applied as a bright-line rule to decide the issue of whether a particular act was general or special.  *Id.* at 22–23.[10]

¶ 10 Courts recognized that a general law "is not necessarily universal, *i.e.,* capable of operating upon all persons or all things within the state legislated for."  *Id.* at 22.

"Are we then to understand that a general law is only one which operates upon all persons or all things?  If so, it is obvious that our general laws are very few, if, indeed, there any of that class.  Obviously such cannot be the meaning of the words 'of a general nature' as here used [in the constitution].  The word general comes from *genus,* and relates to the whole genus or kind, or in other words to a whole class or order.  Hence a law which affects a class of persons or things less than all may be a general law:"

Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* at 22 n. 3, *quoting, Brooks v. Hyde,* 37 Cal. 366, 375 (1869).

¶ 11 A law need not possess universal application to satisfy the definition of a "general law."  Universality in application was only a part of a definition of general, local and special laws, but importantly, a lack of universality in application was not by itself a sufficient reason to make a statute unconstitutional.  See, for example, *State ex rel. Van Riper v. Parsons,* 40 N.J.L. 1, 11 Vroom 1,

---

Constitutions, 118–119 (1998), (growing popularity of limiting legislative power to enact special or local laws in state constitutions discussed); James Q. Dealy, *Growth of American State Constitutions: From 1776 to the End of the Year 1914,* 224–228 (1915), (reprint 1972), (same).

8.  Okla. Const. Art. 5 § 32:

No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State.

9.  *See Chickasha Cotton Oil Co. v. Lamb and Tyner,* 1911 OK 68, 114 P. 333, 336 (Art. 5 § 32 does not apply to Art. 5 § 46); *State v. Dist. Court of Mayes County,* 1967 OK 228, 440 P.2d 700, 705 (same), *overruled on other grounds in Palmer v. Belford,* 1974 OK 73, 527 P.2d 589, 591.

10.  Binney explained that several courts determined various laws to be general in nature on the basis that they regulated or provided for a public interest as opposed to a purely municipal interest.  Charles C. Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* 30–31 (1894).  He noted the resulting confusion when courts attempted to define general, special, public, and private laws.  *Id.* at 31–39. He explained that courts came to realize that the public nature of the subject-matter of a law is not the determinative factor whether a law is a constitutionally prohibited special law.  *Id.* at 32–39. Whether a law involves a state wide (or general) interest versus a purely municipal interest is used by courts when addressing the home rule doctrine.  See ¶¶ 30–35 *infra.*

1878 WL 8254 (Sup.Ct.1878), where the court said that "[t]he term 'general law' does not import universality in the subject or operation of such law." In other words, while it is true that a law that operates universally in a state is a "general law," a law is not necessarily special or local because it operates less than universally.[11]

¶ 12 In pre–1900 special-law and local-law jurisprudence, a legislature generally possessed power to create law that discriminated in some circumstances between the municipalities in a particular state.

> The immediate effect of the prohibition is to prevent any legislation from being passed directly and expressly in regard to any one or more particular corporations, the intention of the Constitution being that whatever powers any corporation should have for the purpose of its corporate existence should be granted on the same terms to all similar corporations, *but the legislature is allowed to judge both as to what differences exist between corporations and what powers they shall possess.* It cannot, however, discriminate between corporations of the same kind. All railroad companies must have the same powers; *all cities where the same circumstances exist must have the same form of government; no law can be passed in regard to a single street or ward in a city.* The stop thus put to discrimination is beneficial as far as it goes, but it is not a complete stop, nor is discrimination the only danger to be avoided.

Charles C. Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* 12 (1894), (emphasis added).

A legislature retained the power to determine circumstances that justified different or discriminatory treatment in laws that applied to some but not all cities in a state.

> In the case of municipal corporations and rural local government also, the prohibition of special legislation works fairly well in the great majority of instances. Most cities, and probably all boroughs, villages, towns, counties, etc., can, for the purpose of their government, be grouped into a few classes, the members of which do not differ greatly from each other in size or other distinctive characteristics, so that *a law for one class can reasonably be expected to work equally well for every member of the class;* while, if it works ill, it is almost certain to do so in every case, and that for some cause which lies deeper than the mere fact that the law is general. The number of places necessarily affected by a law prevents, moreover, the enactment of laws designed in the interest of one place only. If such a law be against the interest of the other communities affected by it, they will oppose its passage, and thus the unfair grant of special privileges will be prevented.

> *In every State, however, there are cities which differ so widely from others that they must be classed by themselves, and a law for a class which though theoretically capable of enlargement actually contains but one or two members, is **practically** a special or local law, even if it be **legally** general.* In such cases the prohibition is to a great degree inoperative, and as regards all strictly municipal matters which concern the whole city, special legislation goes on as before, and with the same results. The legislature cannot indeed order the paving of a particular street or in other ways legislate directly for special parts of the city, but it can create and abolish particular offices, direct how the clerks in any special city department shall be appointed, and in many ways regulate the affairs of a single city just as if no prohibition of special legislation existed.

Binney, *Restrictions upon Local and Special Legislation in State Constitutions,* at 14–15, (emphasis added).

---

**11.** See also T. Sedgwick, *A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law,* 534–536 (J. Pomeroy 2d ed. 1874 & photo. reprint 1980), (citations to, and explanations of, opinions from various states, and including a discussion of the principle that a general law need not operate universally); 1 T. Cooley, Constitutional Limitations, 258–264 (8th ed.1927), (citations to various states, including a quote from *City of Sapulpa v. Land,* 1924 OK 92, 223 P. 640, 35 A.L.R. 872 stating that a general law need not operate on every locality of the state).

¶ 13 The construction placed by other state courts on similar state constitutions, as well as the Territorial Court's construction of the federal statute, were known by the framers of our Constitution. *Chickasha Cotton Oil Co. v. Lamb and Tyner*, 1911 OK 68 ¶ 11, 114 P. 333, 336. Early consideration of the issue appears in *Territory of Oklahoma v. School District No. 83*, 1901 OK 22, 64 P. 241. In *Chickasha* the Court distinguished between special and local laws and performed a separate analysis for both. The Court defined a "local law"[12] and concluded that the provision at issue was a local law. The Court then concluded that the provision was also a special law.[13]

¶ 14 The difference between "local" and "special" became minimized after the enactment of the Constitution when the Court distinguished general laws from local or special laws.[14] One reason for this is that a "local law" is a type of "special law." *School Dist. No. 85 v. School Dist. No. 71*, 1928 OK 689, ¶ 26, 276 P. 186 ("Special laws are not all local, but all local laws are special."). This concept is also observed in Art. 5 §§ 32 and 59. A "local law" referred to in § 32 is a type of "special law" prohibited by § 59, but that local law may pass constitutional muster upon the Legislature's compliance with § 32.

¶ 15 With this background in mind, I now turn to additional opinions on this subject for the purpose of showing that there is no inconsistency with these propositions.

## III. § 46 OKLAHOMA OPINIONS

¶ 16 In *Guthrie Daily Leader v. Cameron*, 1895 OK 71, ¶ 30, 41 P. 635, the Court said about the federal statute's pre-§ 46 language: "This limitation amounts to an absolute prohibition on the legislature enacting any special law in reference to the subjects enumerated." *Id.*, 41 P. at 638. I agree that this applies to the current § 46. But what is a special law?

¶ 17 In *Lowden v. Oklahoma County Excise Board*, 1940 OK 134, 100 P.2d 448, the Court addressed claims resting upon Article 5 §§ 32, 46 and 59. In the context of an unsuccessful tax protest, a party asserted that levies for the purpose of funding certain public offices (county public defender and probation officers) were illegal because the statutes creating the offices violated Article 5 §§ 32, 46, and 59. The statutes at issue applied to counties having a population of 200,000 or more and containing a city of 175,000 population or more. Oklahoma County, containing Oklahoma City, was the only locality that fit the statutes.

¶ 18 One party argued that § 46 prohibited the passing of a local or special law regulating the affairs of a county. *Id.* at 450. On addressing the claim, the Court said:

Our attention is directed to *Roberts v. Ledgerwood*, 134 Okl. 152, 272 P. 448, 450, in which is found quotations from the early case of *Burks v. Walker*, 25 Okl. 353, 109 P. 544, as follows: "In order for a law to be general in its nature and to have a uniform operation, *it is not necessary that it shall operate upon every person and every locality in the state.* A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. * * * *But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation.* As be-

---

12. We defined a local law as one "which in its subject relates but to a portion of the people of the state or their property; and may not, either in its subject, operation or immediate and necessary results, effect the people of the state, or their property in general." *Territory of Oklahoma v. School District No. 83*, 1901 OK 22, ¶ 5, 64 P. 241, 243, quoting, *Clark v. City of Janesville*, 10 Wis. 136, at 136–179 (1859). We also said that a "local law" is "confined in its operation to the property and persons of a specified locality." *Id.* 64 P. at 243, ¶ 7, quoting, *People v. O'Brien*, 38 N.Y. 193 (1868).

13. *Territory of Oklahoma v. School District No. 83*, 1901 OK 22, 64 P. 241 (act was a special law when it created a school district apart from the general school law of the Territory for creating school districts).

14. *See, e.g., State v. Dist. Court of Mayes County*, 1967 OK 228, 440 P.2d 700 (local and special laws distinguished from general laws), *overruled on other grounds in Palmer v. Belford*, 1974 OK 73, 527 P.2d 589, 591.

tween the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination." . . .

This general rule is stated in 59 C.J. 760, as follows: "The fact that at the time a statute is enacted one municipality only falls within the *classification fixed thereby will not cause the statute to be regarded as special or local if the classification is founded in reason and general in terms; but will, if the classification is arbitrary and illusory; the test being whether other municipalities from time to time may be included, or are permanently excluded.* * * *"

Under the authorities coming to our attention upon this consideration it appears that *we must be able to say that the classification of counties by population in these acts is clearly capricious and arbitrary before we would be justified in holding that* **these constitutional provisions** *were violated—that such classification by population is wholly unrelated to the objects of the acts.*

It is suggested that counties of larger populations composed substantially of urban population are faced with greater need for the type of services provided by these legislative acts, than are the more sparsely populated counties. That suggestion is not wholly without merit, and must have guided the Legislature in adopting the classification selected. We know in common with others that the courts within counties coming within the classification present here have much more need for the services of the agencies here provided than counties with less congestion of population. The congestion of population is closely related to the object to be attained by the legislation. This basic principle operates uniformly throughout the state. We, therefore, affirm the judgment of the Court of Tax Review.

*Lowden,* 100 P.2d at 450, (citations omitted and emphasis added).

¶ 19 A § 46 claim requires an analysis of whether the Legislature acted in an arbitrary or capricious manner as a part of defining whether an act is a special or local law. *Lowden v. Oklahoma County Excise Board, supra. Lowden* serves as an example of the Court treating a "special law" for the purpose of § 46 as identical to a "special law" for the purpose of § 59. Whether the classification drawn by the Legislature is reasonable is part of defining whether a particular law is special, local, or general. Section § 46 prohibits only special and local laws, but whether a particular law is impermissibly special or permissibly general necessitates a determination of whether the Legislature's classification is reasonable.

¶ 20 In *Barrett v. Board of Commissioners of Tulsa County,* 1939 OK 68, 90 P.2d 442 the Court addressed an Art. 5 § 46 claim. The statute at issue gave judgments rendered in federal courts an effect that was not provided to judgments of state courts. The Court said:

¶ 14 *Section 46 of article 5, Oklahoma State Constitution, prohibits the passage of local or special laws* "providing or changing the method for the collection of debts or the enforcement of judgments," and section 59 of article 5 provides, "that laws of a general nature shall have a uniform operation throughout the state and where a general law call be made applicable, no special law shall be enacted."

¶ 15 That *the law now before us* (chapter 51, S.L.1925) *is one providing methods for the collection of debts and the enforcement of judgments* is self-evident. *Is it then a valid general law or an invalid special law?*

¶ 16 It is not necessary, in order that a law be general and uniform in its operation (as contemplated by section 59, article 5, supra) as distinguished from special (as prohibited by section 46 of article 5), that it operate universally and alike throughout the state upon all persons or things. *On the contrary, the Legislature may by the adoption of a classification limit the scope of its application without offense to constitutional inhibitions, if the classification or limitation so adopted is neither arbitrary*

*nor capricious, and bears a reasonable relation to the object of the legislation.*

¶ 17 *When a law which is not universal in its operation is adopted it must, in order to avoid the stigma of special legislation, satisfy the test adopted by this court. In School District No. 85, Kay County, v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186,* where we said in paragraph 4 of the syllabus:

"Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they should naturally embrace. They create preference and establish inequality. They apply to persons, things, and places possessed of certain qualities or situations and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

¶ 18 *Similarly it was said in paragraph 1 of the syllabus in Roberts et al. v. Ledgerwood et al., 134 Okla. 152, 272 P. 448,* that:

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination."

¶ 19 *Does the act before us constitute special legislation within the tests prescribed by the foregoing decisions?* Superficially the statute prescribes a special method for the enforcement of a particular class of judgments, namely those rendered by fed-

eral courts. Incidentally it may be noted at this point that the act neither attempts nor purports to authorize the federal court to adopt a different procedure in the collection of judgments than that which would otherwise obtain. Its directions go to county officials. It prescribes a method by which they shall act to enforce the judgments embraced within the provisions of the act. Their right and duty to act, if the law be valid, arises from the legislative mandate independent of any direction by the federal court. By the terms of the law, the federal court judgment is merely a prerequisite to an exercise of the power attempted to be conferred upon the county officials. Thus the law here involved is distinguished from those legislative acts which provide for variations in the procedure applicable to different classes of courts (as distinguished from courts of the same class) throughout the state which may be valid. See discussion in *City of Sapulpa v. Land.* 101 Okla. 22, 223 P. 640, 35 A.L.R. 872.

*Barrett v. Board of Commissioners of Tulsa County,* 1939 OK 68, at ¶¶ 14–19, 90 P.2d at 446–447, (emphasis added).

¶ 21 A § 46 challenge was raised. *Id.* at ¶ 14. The Court noted that the matter involved a statute for methods enforcing a judgment. *Id.* at ¶ 15. Section 46 prohibits local and special laws on the subject of "Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings ... or providing or changing the methods for the collection of debts, or the enforcement of judgments...."

¶ 22 The Court then said that the question presented was whether the challenged law was general or an invalid special law. *Id.* at ¶ 15. How did this Court proceed? It said that the Legislature could make classifications that were not arbitrary or capricious. *Id.* at ¶ 16. It then said that the challenged law had to satisfy the test explained by the Court in *School District No. 85, Kay County, v. School District No. 71, Kay County,* 1928 OK 689, 276 P. 186. *Barrett* at ¶ 17.

¶ 23 Our opinion in *School District No. 85, Kay County, supra,* did not involve a claim pursuant to Art. 5 § 46, but Art. 5 § 59. *Id.,*

1928 OK 689 at ¶ 19, 135 Okla. 270, 276 P. 186 and following. In other words, in *Barrett*, the Court said that to determine if an act was an invalid special law for the purpose of § 46 the Court must follow its language in the previous opinion explaining a "special law" for the purpose of Art. 5 § 59.

¶ 24 In *Barrett* the Court then quoted from *Roberts et al. v. Ledgerwood*, 1928 OK 723, 272 P. 448. *Roberts* is *not* a § 46 controversy, but one involving Art. 5 § 59. *Roberts*, at ¶ 4 and following. Again in *Barrett* the Court quoted from a § 59 controversy for determining an invalid special law pursuant to Art. 5 § 46. *Barrett* then concluded that the law was an invalid special law for purpose of both Art. 5 § 46 and § 59. *Id.* at ¶ 0. This conclusion makes sense because the Court was using the same definition of "special" for both § 46 and § 59. *Barrett* serves as an example of the Court using its § 59 opinions to define a special law for the purpose of § 46.

¶ 25 In *Wilkinson v. Hale*, 1939 OK 11, 86 P.2d 305, the Court determined that the challenged legislation violated Art. 5 § 46 "by reason of the arbitrary and capricious nature of the classification therein adopted." *Id.* at ¶ 0. The Court did not expressly conclude that § 59 was violated, although a § 59 challenge was made. *Id.* at ¶ 7. *Wilkinson*, like the Court in *Barrett*, discussed classifications made by the Legislature, noting that a "classification so adopted must be neither arbitrary nor capricious and must bear a reasonable relation to the object to be accomplished." 1939 OK 11, ¶ 10, 184 Okla. 165, 86 P.2d 305. But the classification was unreasonable, and thus § 46 was violated. In any event, the reasonableness of the classification

was evaluated by the Court in the context of a § 46 challenge.[15]

## IV. REYNOLDS v. PORTER

¶ 26 In *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, the Court stated that if a statute is a special law the Court need not consider the law's reasonableness. *Id.* at ¶ 17, 760 P.2d at 822–823. The Court need only determine for a § 46 analysis whether the statute upon a subject listed in § 46 "targets for different treatment less than an entire class of similarly situated persons or things." *Id.* at ¶ 17, 760 P.2d at 823, emphasis deleted. Thus, every § 46 claim involves identifying a class.

¶ 27 In a circumstance involving "limitations," a subject listed in § 46, *Reynolds* stated:

> The § 46 subject dealt with in the three-year restriction under inquiry here is the limitation of a civil action. In determining whether the statute operates on an entire class of actionable claims that are similarly situated, we identify the class by reference to the general legislative scheme of limitations patterned after the English legal tradition that includes the common-law gloss.

*Reynolds v. Porter*, 1988 OK 88, at ¶ 18, 760 P.2d at 823, (emphasis deleted).

¶ 28 Does *Reynolds* mean that the Legislature may not discriminate between different types of actions? Must all actions have the same limitations period? Of course not. The class was not the subject "limitations" but the classifications found in the law relating to limitations. The Framers of § 46 knew the difference between a tort and a contract and how different limitations were enacted for them. In *Reynolds* the Court

---

**15.** Contrary to the statement in a dissent, this principle has been long recognized in Kansas. That State's Supreme Court recently explained its reasoning in *Rambo v. Larrabee*, 67 Kan. 634, 73 P. 915 (1903), and stated that for an act to have uniform operation throughout the state it need not affect every community or individual alike since the legislature possesses the power to make reasonable classifications of individuals, surroundings, or conditions. *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 848 (1987). The *Rambo* Court concluded that the legislation applied to only one county by population and that "there was no rational basis for such classification." *State ex rel. Stephan v. Smith*, 747 P.2d at 848, *quoting, Rambo*, 73 P. at 915. The Kansas Supreme Court pointed out that in *Rambo* that court expressly stated that a classification on the basis of population would be reasonable and constitutional in different circumstances: "We do not mean to hold that a classification for any purpose based upon population would be invalid. For a great many purposes, such a classification would be most reasonable and natural, but for the classification here attempted it is not." *Id. Rambo* is consistent with both Oklahoma jurisprudence on this issue and the analysis herein.

merely identified "negligent tort claims" as a class from which the Legislature could not create subclasses for the purpose of limitations. *Id.* at ¶ 18, 760 P.2d at 823. In sum, in *Reynolds* the Court discussed the common-law classifications for limitations, and this was proper because the Framers knew of these classifications for limitations. Section 46 is about classification.

¶ 29 Oklahoma's first Legislature contained members who knew the Constitution.[16] Classifications for cities based upon population were common at this time and were codified in the statutes of the first Legislature. Classification based upon population for incorporation and organization was expressly allowed by the Constitution in Article 18.[17] There were cities of the "First Class" having a population of 2,000 or more. General Statutes 1908, § 699. Beyond organization according to population, the Legislature was concerned with the salaries of city officials such as the city attorney, police judge, and treasurer in cities with a population in excess of 25,000. *Id.* at § 839. The Legisla-

ture was also concerned with the public contracts of cities with a population in excess of 25,000. *Id.* at §§ 844–847. Many examples may be found of our Legislature using population of cities for application of particular statutes. For example, in *Isaacs v. City of Oklahoma City,* 1966 OK 267, 437 P.2d 229, *cert. denied,* 389 U.S. 825, 88 S.Ct. 63, 19 L.Ed.2d 79 (1967), this Court upheld the constitutionality of urban renewal laws that applied to cities with a population in excess of 100,000. In summary, population is a classification historically recognized in the law for cities for the purpose of legislation, and the Court's opinion is thus consistent with the common-law classifications used in *Reynolds.*[18]

## V. HOME RULE DOCTRINE

¶ 30 In the District Court and by supplemental briefs on appeal,[19] the City argues that the Act violates Article 18 § 3 of the Oklahoma Constitution.[20] However, the Dis-

16. For example, the Speaker of the House in the First Legislature was William H. Murray, the former President of the Oklahoma Constitutional Convention. E. McReynolds, A. Marriott, and E. Faulconer, *Oklahoma: The Story of its Past and Present,* 314 (1961); 2 W. Murray, *Memoirs of Governor Murray and the True History of Oklahoma,* §§ 173–236 (1945).

17. *Edmonds v. Town of Haskell,* 1926 OK 289, 247 P. 15, 17. In *Edmonds,* Art. 5 § 46 was also raised when this Court stated that express authority existed pursuant to Article 18 § 1 to create a statute for cities with a population in excess of 1,000 to pave streets and make assessments therefor, and then stated that: "The act in question cannot be said to be more than a reasonable and fair classification of towns in proportion to their population, and a grant of the same privileges to all towns of the same class." *Id.,* 247 P. at 17–18.

18. A dissenting opinion states that the parties agreed during oral argument that the challenged Act regulates the affairs of cities. What counsel meant by this statement is a "red herring" and irrelevant to this Court's analysis of either Article 5 or Article 18. The statement is a legal conclusion that the legal reach or scope of the challenged act includes "affairs" of cities. The Court has said that a conclusion of law made by counsel and involving the constitutionality of a statute involving the structure or function of government is not binding on this Court. *State ex rel. State Ins. Fund v. JOA, Inc.,* 2003 OK 82, ¶ 23, 78 P.3d 534, 540–541. This Court has noted that a con-

cession of an assistant attorney general that a senate bill was unconstitutional need not be followed when the Court examines the legislation. *Jones v. Cordell,* 1946 OK 135, 168 P.2d 130, 131. No state official, counsel for a state official, or counsel for a non-state party possesses the authority to create an estoppel, or concession, or stipulation of law so as to subtract from an attribute of the State's sovereign power. *State ex rel. State Ins. Fund v. JOA, Inc.,* 2003 OK 82, ¶ 7, ¶ 23, 78 P.3d 534, 536–537, 540–541. Counsel's statement at oral argument may not be used as authority on the scope of the state's sovereign power.

19. This appeal is from an order granting summary judgment and ordinarily the briefs considered by an appellate court on an appeal from a summary judgment are those that the trial court had to adjudicate the motion for summary judgment. *Purcell v. Santa Fe Minerals, Inc.,* 1998 OK 45, n. 2, 961 P.2d 188, 190, *citing,* Okla.Sup. Ct.R. 1.36. An appellate court may order supplemental briefs for adjudication of an appeal from a summary judgment. *Harkrider v. Posey,* 2000 OK 94, n. 50, 24 P.3d 821, 833.

20. Okla. Const. Art. 18 § 3(a):

Framing and adoption of charter—Approval by Governor—Effect—Record—Amendment

Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by

trict Court did not rule on this issue. This Court does not usually address on appeal issues of law that were left unadjudicated by a District Court judgment. *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587. However, if the Art. 18 § 3 claim presents a *publici juris* issue and no additional facts are necessary for its adjudication,[21] the Court possesses the judicial discretion to determine on appeal the issue of law presented by the parties' briefs in the District Court and this Court.[22] In various

causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city, to be elected by the qualified electors of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board or a majority of them, and returned, one copy of said charter to the chief executive officer of such city, and the other to the Register of Deeds of the county in which said city shall be situated. Such proposed charter shall then be published in one or more newspapers published and of general circulation within said city, for at least twenty-one days, if in a daily paper, or in three consecutive issues, if in a weekly paper, and the first publication shall be made within twenty days after the completion of the charter; and within thirty days, and not earlier than twenty days after such publication, it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this State. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. A copy of such charter, certified by the chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors and its ratification by them shall, after the approval of such charter by the Governor, be made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of said Register of Deeds, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided) at a general or special election, and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter.

21. In public-law disputes the Court is free to disregard deficiencies in the theories pressed, but

contexts the Court has said that a legal challenge to a statutorily authorized collective bargaining agreement involving public employees presents a *publici juris* issue.[23] The Article 18 § 3 issue is appropriate for judicial resolution in this Court.

¶ 31 Article 18 § 3 of the Oklahoma Constitution provides the method by which a city may frame a charter for its own government, and states that once the charter is voted on by the people and approved by the Governor,

the Court may not do the same for deficiencies in the record. *State v. Torres*, 2004 OK 12, ¶ 7, 87 P.3d 572, 578. In a proceeding granting equitable relief, as this one is, the ordinary role of the appellate court is to define the law and the role of the trial court is to hear evidence and find facts. *Matter of Estate of Crowl*, 1987 OK 13, ¶ 4, 737 P.2d 911, 914. See note 28 *infra.*, and accompanying material discussing the nature of this proceeding. Summary judgment is not used to try disputed fact issues. *Frazier v. Bryan Memorial Hosp. Authority*, 1989 OK 73, 775 P.2d 281, 289. In our case today, the response to the City of Enid's motion for summary judgment stated that the facts material to the District Court's summary adjudication were not in dispute. Response of Dec. 17, 2004, at p. 4. Stipulations of facts made by parties are binding on courts, *State ex rel. State Ins. Fund v. JOA, Inc.*, 2003 OK 82, ¶ 6, 78 P.3d 534, 536. No issue of fact remains to be adjudicated in this controversy, and thus the state of the appellate record relating to factual matter is no bar to the Court addressing the Article 18 § 3 issue.

22. The Court has said, in the exercise of its appellate jurisdiction, "When public-law issues are present this court may, on review, resolve them by application of legal theories that were not tendered below." *Matter of McNeely*, 1987 OK 19, 734 P.2d 1294, 1296. Here the issue was tendered by the parties to the trial court but left unadjudicated. A trial court's exercise of judicial economy may not be used to thwart this Court's review of a *publici juris* issue that was tendered by the parties to both a District Court and this Court on appeal. *Matter of McNeely*, *supra.*

23. *See, e.g., Stone v. Johnson*, 1984 OK 76, 690 P.2d 459, 461 (right of collective bargaining in the Firefighters' and Policemen's Arbitration Law is a matter of statewide concern); *Association of Classroom Teachers of Oklahoma City v. Independent School Dist. No. 89*, 1975 OK 118, 540 P.2d 1171, 1175, (importance of properly administrated school system was vital to the welfare of the State); *DeLafleur v. Independent School Dist. No. 11*, 1986 OK 37, 727 P.2d 1352, 1353, (statewide concern for procedure used to select bargaining representative).

the charter "become[s] the organic law of such city and supercede[s] any existing charter and all amendments thereof and all ordinances inconsistent with it." In explaining the breadth of this provision, the Court has held that a city's charter is analogous to a constitution and, as such, supercedes the laws of the state regarding "merely municipal affairs." *City of Tulsa v. Public Employees Relations Bd.*, 1990 OK 114, 845 P.2d 872, 875. The Court said that:

"[T]he line between 'general matters of the state and its government' and 'merely municipal affairs' is the judicially accepted boundary between the domain in which the legislature is supreme and that in which the cities may insist upon independence." Constitutional Home Rule, at 159. The determinative question is whether the issue involves a matter that is purely municipal, or whether there is a wider public interest.

*City of Tulsa v. Public Employees Relations Bd.*, 1990 OK 114, 845 P.2d at 875, *quoting,* Merrill, *Constitutional Home Rule for Cities Oklahoma Version,* 5 Okla.L.R. 139, 159 (1952).

What is a merely municipal affair? Dr. Merrill explained one problem in defining a purely municipal affair:

In speaking of the test to be applied to the solution of this problem, Mr. Gray spoke of it as depending on "whether the power is purely municipal, or whether there is a wider public interest." ... Mr. Gray, with his characteristic acuteness, focused attention upon the true nature of the problem. He spoke of "a wider public interest," not in terms merely of the possible affectation of people or things beyond the city limits. It is not any single thing upon which we are to concentrate our attention. *Rather, we are to take in to account all the factors*

*which center around the particular exercise of power and strike a balance to determine whether we can say there is a public interest "wider" than a purely municipal interest. This we cannot do by a rule of thumb, but by balancing the interests affected by the matter under consideration. It is this over-all consideration of factors involved which offers the best way to a satisfactory explanation of the otherwise oft perplexing course of decision.*

Merrill, *Constitutional Home Rule for Cities Oklahoma Version,* 5 Okla.L.R. 139, 161 (1952) (emphasis added).

Is the possession of statutory collective bargaining rights and grievance procedures by municipal employees in municipalities with a population in excess of 35,000 a purely municipal matter? [24] No, it is not, and I begin by identifying some of the interests that Dr. Merrill states that the Court should balance.

¶ 32 The City of Enid claims that the Act violates Article 18 § 3. The City argues that matters relating to the selection, hiring, and firing of municipal officers and employees, as well as the tasks assigned them and the compensation paid them are of purely local concern. Generally, compensation paid to municipal officers is a matter of municipal concern, and a municipal ordinance may trump a contrary state statute. *State ex rel. Trimble v. City of Moore,* 1991 OK 98, 818 P.2d 889, 898. I agree that the local legislative power over the local public purse is an important exercise of local sovereignty.[25] However, the City of Enid may not use *Trimble* to establish a legal proposition of universal application that the State has no legally cognizable interest in any aspect of the employment relationship between a city and its employees.

---

**24.** The primary thrust of the City's Article 18 argument addresses the municipal employer-employee relationship, collective bargaining, and the employee grievance procedure provided by the Act. Because the City has the burden to demonstrate the Act's unconstitutionality, I have summarized the City's argument in this question. *See, e.g., Local 514 Transport Workers Union of America v. Keating,* 2003 OK 110, ¶ 15, 83 P.3d 835, 840 (the burden to show unconstitutionality is upon party challenging a statute); *Hughes Drilling Co. v. Crawford,* 1985 OK 16, 697 P.2d

525, 530 (same); *Spearman v. Williams,* 1966 OK 33, 415 P.2d 597, 603 (same).

**25.** *See, e.g., Jones v. Freeman,* 1943 OK 322, 146 P.2d 564, 569, *overruled on other grounds, Alexander v. Taylor,* 2002 OK 59, ¶ 11, 51 P.3d 1204, 1209, (quoting, *Stiglitz v. Schardien,* 239 Ky. 799, 40 S.W.2d 315 (1931), (control over the public purse is one characteristic of government by consent)).

¶ 33 When Dr. Merrill explained the division of authority between matters of municipal and state concern he discussed labor relations and conditions of employment.

Labor relations and the conditions of industrial employment may be of more than local significance. There, are elements, such as competition between localities, the effect of conditions in one locality upon the general economy, the impact of industrial disturbance and strife upon the public order, which seem to bring the "wider interest" of the state into dominance in this area. What few cases there are in Oklahoma support the claim of the state to superiority. Thus a home rule city has been held incompetent to forbid peaceful picketing, as an incident to a labor dispute, in the face of a state law permitting such picketing. Even in respect to the conditions of labor upon municipal public works, state regulation has been upheld on the ground that "regulation of the hours of labor is a state function, designed to promote the general welfare of all the people of the state, which has not been and possibly cannot be delegated to a municipality."

Merrill, *Constitutional Home Rule for Cities: Oklahoma Version*, 5 Okla.L.Rev. 139, 171–172 (1952).

Certain labor relations are a matter of state significance. *See State v. Tibbetts*, 21 Okla. Crim. 168, 205 P. 776 (1922), where a statute fixing the hours of labor performed on public work, and providing that the compensation paid shall conform to the wage paid for like labor in that locality was held not to violate the Constitution. Additionally, municipal employees have been subject to the Workers' Compensation Act, in various degrees, during much of this State's history, and the munici-

pal purse has been burdened by these state created obligations.[26] In summary, the municipal employer-employee relationship has been subject to legislative burdens relating to conditions of employment.[27]

¶ 34 In *Midwest City v. Cravens*, 1975 OK 22, 532 P.2d 829, 834, the Court said that it was a matter of state wide concern that permanent members of a fire department or police department be accorded the privilege of communicating with their respective employers with a collective voice. This ability to communicate with a collective voice is not any less a public interest for other municipal employees. The City claims that a grievance procedure resulting from a collective bargaining agreement will fetter its discretion in dismissing employees. However, the City does not explain what type of employee it would desire to dismiss from public service that it could not also dismiss pursuant to an agreement with its employees. Labor relationships and labor organizations have been the subject of a recent constitutional amendment which demonstrates a state interest in how such organizations function in this state. *See, e.g., Local 514 Transport Workers Union of America v. Keating*, 2003 OK 110, ¶ 15, 83 P.3d 835 (discussing Okla. Const. Art. 23 § 1A).

¶ 35 Of course, just as the City of Enid may not set up its employer-employee relationship as an absolute bar to state legislative intrusion, the Legislature may not merely claim the existence of a wider state interest and sap municipal power in a circumstance that is purely or exclusively in the municipal sphere of control. However, I conclude that the history of legislative control over certain aspects of the municipal employer-employee relationship, the historically recognized im-

26. *See, e.g., Payton v. City of Anadarko*, 1937 OK 49, 64 P.2d 878 (discussion of prior opinions involving municipal employees and whether employee was engaged in a governmental function or corporate function when injured); *City of Edmond v. Monday*, 1995 OK 132, 910 P.2d 980 (workers' compensation award against city sustained on review).

27. Similarly, our Court of Civil Appeals has determined that the City of Tulsa was required to compensate police officers for their salary while absent for National Guard training. *City of Tul-*

*sa v. Taylor*, 1976 OK CIV APP 42, 555 P.2d 885, (released for publication by order of the Court of Civil Appeals). That court concluded that whether a person is to be influenced and encouraged to serve in the military cannot be classified as a purely local or municipal issue, and the leave policy as set out by state statutes is a statewide benefit granted by the Legislature to all persons who recognize a duty to serve their State and Country in the Armed Services and could not be taken away by a city. *Id.*, 555 P.2d at 888.

portance of certain municipal employees possessing a mechanism for communicating with a collective voice, and the history of the People's exercise of control over certain aspects of labor organizations show that a wider state interest exists sufficient to counterbalance a city's desire for control over its fiscal purse and unfettered control over employer-employee relationships *for the purpose of this Act.* Certain labor relations are a matter of state significance, and the Act is within this category. It does not violate Article 18 § 3 of the Constitution.

## VI.  CONCLUSION

¶ 36 This is an appeal from a District Court injunction.[28]  Injunction proceedings are equitable in nature. *Brown ex rel. Brown v. Oklahoma Secondary School Activities Ass'n,* 2005 OK 88, ¶ 11, 125 P.3d 1219, 1225; *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546, 549. An injunction will be affirmed on appeal unless it is clearly against the weight of evidence, contrary to law or established principles of equity. *Sharp v. 251st Street Landfill, Inc.,* 925 P.2d at 549. The injunction is contrary to law. In an equitable proceeding this Court may render a judgment that should have been rendered by the trial court. *Tulsa Creamery Co. v. Tulsa Milk Products Co-op. Ass'n,* 1935 OK 1176, 51 P.2d 950, 951. I thus concur in the Court's opinion reversing summary judgment and directing entry of judgment on remand.

OPALA, J., with whom TAYLOR and COLBERT, JJ., join, dissenting.

¶ 1 To be tested for conformity to Art. 5 § 46, Okl. Const.,[1] is that provision of 11 O.S. Supp.2004 § 51–202(12) in the Oklahoma Municipal Employees Collective Bargaining Act (Act), 11 O.S. Supp.2004 § 51–200 *et seq.,* **which confines collective bargaining benefits** to employees of municipalities **whose population exceeds thirty-five thousand.** The court holds the Act valid. I can accede neither to its judgment nor to today's pronouncement. Writing in dissent, I offer an addendum to the analytical framework for the issue at hand and a critical analysis of the errors that crept into the court opinion.

## I.  The § 46 Analysis

¶ 2 The only state constitutional provision tendered for testing here is Art. 5 § 46. A statute collides with the § 46 uniformity requirements when it targets for disparate treatment less than a whole class embraced within one of that section's prohibited subjects. It is not denied that (1) § 46 mandates in absolute terms **statewide uniformity** for acts "[r]egulating the affairs of counties, cities, towns, wards, or school districts ..." and (2) the Act here under consideration falls under that rubric of enactments.[2] **The § 46 prohibition of disparate treatment is absolute, unequivocal and unqualified.** Employees of cities with a population of **less** than thirty-five thousand **must** not be accorded treatment preferential to and **disparate** from that extended to employees of cities with a population of **over** thirty-five thousand.

## II.  The Court's Opinion

¶ 3 The court and the author of the statement in concurrence argue that population-based classifications are not repugnant to § 46 if they are not arbitrary and capricious. In other words, a general law that is local in its application is not offensive to § 46. They interpret the aberrational pronouncement in

28. The City also sought declaratory relief. The combination of declaratory relief and injunctive relief is not unusual when a party challenges the constitutionality or application of a statute. *Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n,* 1994 OK 142, 897 P.2d 1116, 1118–1119. A suit for a declaratory judgment assumes the nature of the controversy at issue. *Macy v. Oklahoma City School Dist. No. 89,* 1998 OK 58, ¶ 11, 961 P.2d 804, 807.

1. The terms of Art. 5 § 46, Okl. Const., are:

> The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
> * * *
> The creation, extension, or impairing of liens;
> Regulating the affairs of counties, cities, towns, wards, or school districts.

2. Counsel for appellants conceded at oral argument that the Act does regulate the affairs of cities.

*Edmonds*[3] as declaring all non-arbitrary population-based classifications harmonious with § 46. Because the statute under construction in *Edmonds* was permissive[4] rather than obligatory, the "except as otherwise provided" language of § 46 was properly invoked.[5] The statute here before us is not permissive. It **requires** certain municipalities to deal with their workers by application of collective bargaining process. **To apply § 46's permissive language to obligatory acts expands the exception to swallow the rule.**

¶ 4 **Obligatory acts on prohibited subjects which apply to some counties on a population-based classification are clearly repugnant to § 46.** To suggest otherwise perpetuates the fiction that general law with restricted local application, such as that found in this Act, and special law that passes constitutional muster are to receive identical legal treatment.[6] Both are permissible under § 59 but not so under § 46. To say both are to be treated alike confuses the analysis fitting under § 59 with that which is required under § 46. **The court and the author of the statement in concurrence are actually applying a § 59 analysis to a § 46 legal problem for which they fashioned a falsely-crafted dichotomy.**

¶ 5 Assuming *arguendo* that obligatory acts with population-based classifications are permissible under § 46, the court and the author of the statement in concurrence still erroneously conclude the Act is a general law by finding the intent of the Act to be congruent with the classification.[7] Their approach is violative of the basic canon of construction that requires legislation to be construed in light of its identified purpose.[8] **The expressly stated intent of the legislation here under scrutiny was to protect by collective bargaining process the employees of all municipalities in the State of Oklahoma.** It is thus expressly incongruent with the Act's dichotomous division of municipalities. This is so because **the population classification does not allow all similarly situated employees of all municipalities to be embraced within a single class.** The Act is "fraught with the vice of underinclusiveness because its sweep embraces less than an all-inclusive ... class." [9]

¶ 6 Furthermore, the court and the author of the statement in concurrence fail to recognize that § 46 and Art. 18 § 3 analyses are incompatible. If municipal workers' bargaining rights are a matter of state interest, any regulation of this arena ought to be extended to all municipalities. Conversely, any law that affords disparate treatment of similarly situated individuals cannot be said to cover "matters at large" within the state.[10] The Act at issue is either a general law with local

---

3. 1926 OK 289, 247 P. 15.

4. *See Kirk v. McCallister*, 97 Okla. Cr. 104, 259 P.2d 325 (1953) (a permissive law is one in which the benefits and obligations of law apply only to those who elect to bring themselves within the terms of the law).

5. *Id.* at ¶¶ 9, 17–18.

6. *See Guthrie Daily Leader v. Cameron*, 1895 OK 71, 41 P. 635 (statute relating to persons or things as a class is a general law whereas that which relates to particular persons or things of a class is special); *Territory v. School Dist. No. 83 of Oklahoma County*, 1901 OK 22, 64 P. 241 (a special law relates to and distinguishes one section of a general class from others); *but see School Dist. No. 85, Kay County v. School Dist. No. 71*, 1928 OK 689, 276 P. 186 (special laws are not all local though all local laws are special).

7. *See Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, 823 ("In determining whether the [a] statute

[is general] ... we identify the class by reference to the general legislative scheme of limitations patterned after the English legal tradition that includes the common-law gloss.")

8. *See* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about Statutes are to Be Construed*, 3 Vand. L.Rev. 395 (1950) (explaining the "thrust" and "parry" of the canons of construction).

9. *Reynolds*, note 7, *supra*, at 823; *See Wilkinson v. Hale*, 1939 OK 11, ¶ 10, 86 P.2d 305, 307 ("local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they should naturally embrace. They create preference and establish inequality.")

10. *See Lackey v. State*, 1911 OK 270, ¶ 20, 116 P. 913, 918 (matters are of a municipal or local concern provided that such matters do not "infringe[ ] upon matters of the state at large, or affects its people generally.")

application affecting municipal matters[11] or, if it is of general application, the Act is unconstitutionally underinclusive. It does not embrace all similarly situated municipalities. **The Act cannot be said to deal with a general matter of statewide concern and, in the same breath, have a restricted local application.**

¶7 In summary, the Act's dichotomous division of cities by population for application to collective bargaining for city employees is not general but special law on a constitutionally impermissible subject. It **offends** the § 46's mandated norms of uniformity, symmetry and evenhanded treatment. The court's opinion and the author of the statement in concurrence confuse the prohibition of § 46 with the § 59 analytical framework and expand, without textual warrant, the permissive clause found in the former section. The § 46 and Art. 18 § 3 analyses which the court and the author of the statement in concurrence offer today are incompatible.

¶8 I hence dissent from the court's judgment, from its pronouncement, and from the statement in concurrence.

TAYLOR, J., with whom WATT, C.J., and OPALA and COLBERT, JJ., join, dissenting.

¶1 The majority opinion holds the Oklahoma Municipal Employees Collective Bargaining Act (Act),[1] is a general law of statewide concern that operates upon a legitimate class of municipalities with more than 35,000 inhabitants. In my opinion, the Act is contrary to the Oklahoma Constitution, art. 5, §§ 46 and 59. I write in dissent to address the requirements of these two sections in our constitution and their application to the Act.

¶2 As detailed below, I read art. 5, § 46 as an injunction against the Legislature regulating the affairs of some, but not all, cities. In my opinion, art. 5, § 46 specifies cities as a group and requires that legislation regulating a municipal affair must operate uniformly upon all cities throughout the state. To test the Act's compliance with art. 5, § 46, we

must identify the cities upon which the Legislature imposed the burden of collective bargaining. The Act, by its own terms, does not regulate the labor affairs of all cities in the State, rather it operates upon only a few cities. By limiting the Act's operation to only those municipalities with more than 35,000 inhabitants, the Legislature enacted a special law that is prohibited by art. 5, § 46 of the Oklahoma Constitution.

¶3 As also detailed below, I read art. 5, § 59 as a mandate to the Legislature to give uniform operation throughout the State to any law of a general nature. As a statewide concern, non-uniform municipal employees across the state have an interest in the right of collective bargaining. As a statewide concern, collective bargaining for non-uniform municipal employees is a subject of a general nature. To test the Act's compliance with art. 5, § 59, we must identify the municipal employees to whom the Legislature granted the right of collective bargaining. The Act, by its own terms, does not grant the right of collective bargaining to all interested non-uniform municipal employees throughout the State, rather it operates upon the employees of only a handful of cities in the State. By limiting the Act's operation to only those cities with more than 35,000 inhabitants, the Legislature prevented uniform operation of this law of a general nature contrary to the statewide uniformity mandate of art. 5, § 59 of the Oklahoma Constitution.

¶4 The Oklahoma Constitution, art. 5, § 46, provides in pertinent part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

. . .

**Regulating the affairs of counties, cities, towns, wards, or school districts** . . . .

(Emphasis added.)

¶5 Included in the part of the original constitution entitled "Limitations," art. 5, § 46 specifically prohibits the Legislature

11. Indeed the argument by the court and the author of the statement in concurrence to demonstrate that municipalities with a population under 35,000 should not be forced to collectively bargain with their employees is sufficient to

show that the Act does not concern "matters of the state at large."

1. 2004 Okla. Sess. Laws, ch. 62, codified at 11 O.S.Supp.2005, §§ 51–200 *et seq.*

from passing local or special laws relating to twenty-eight subject areas. One of the twenty-eight subject areas listed in art. 5, § 46 is **"regulating the affairs ... of cities."** This constitutional provision is designed **to prevent legislators from** interfering with local management by **passing laws that single out some localities but leave others unaffected** by the law. *Bradford v. Cole*, 1923 OK 571, 217 P. 470. At oral argument before this Court, all parties agreed the challenged Act regulates the affairs of cities and the majority opinion concludes the Act falls within this provision in art. 5, § 46.

¶ 6 In my opinion, laws relating to the twenty-eight subject areas listed in art. 5, § 46 must operate throughout the state so as not to be local or special.[2] That is, § 46 requires any statute "regulating the affairs of cities" to operate upon all "cities" throughout the state so as not to be a special law. It requires state legislation regulating the affairs of cities to embrace all cities in the state. This is the only meaningful reading of art. 5, § 46. Any other reading would allow the Legislature to regulate the affairs of some cities but not all cities, rendering the provision meaningless.

¶ 7 To test the Act's compliance with art. 5, § 46, we must determine if the Act operates upon all cities in the state. There are more than 150 cities in Oklahoma according to recent U.S. Census information in the appellate record. The Act expressly limits its operation to municipalities with more than 35,000 inhabitants, which, at the present time, is eleven cities.[3] Clearly, the Act does not embrace all cities in the state. It singles out a few cities upon which it imposes the burden of collective bargaining with non-uniform municipal employees, leaving all other cities unaffected.

¶ 8 We have said art. 5, § 46 is an **absolute and unequivocal** prohibition against

2. The subject areas listed in Article 5, § 46 are:
   1) the creation, extension, or impairing of liens;
   2) regulating the affairs of counties, cities, towns, wards, or school districts;
   3) changing the names of persons or places;
   4) authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;
   5) relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;
   6) vacating roads, town plats, streets, or alleys;
   7) relating to cemeteries, graveyards, or public grounds not owned by the State;
   8) authorizing the adoption or legitimation of children;
   9) locating or changing county seats;
   10) incorporating cities, towns, or villages, or changing their charters;
   11) for the opening and conducting of elections, or fixing or changing the places of voting;
   12) granting divorces;
   13) creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
   14) changing the law of descent or succession;
   15) regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;
   16) regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;
   17) regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;
   18) fixing the rate of interest;
   19) affecting the estates of minors, or persons under disability;
   20) remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
   21) exempting property from taxation;
   22) declaring any named person of age;
   23) extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability;
   24) giving effect to informal or invalid wills or deeds;
   25) summoning or impaneling grand or petit juries;
   26) for limitation of civil or criminal actions;
   27) for incorporating railroads or other works of internal improvements;
   28) providing for change of venue in civil and criminal cases.

3. The statutory definition of "municipality" includes cities and towns. 11 O.S.2001, § 1–102(5). Oklahoma municipalities include a total of more than 600 cities and towns according to the U.S. Census information in the appellate record.

special legislation in the listed subject areas. *Reynolds v. Porter,* 1988 OK 88, ¶ 21, 760 P.2d 816, 824. I am cognizant of the general principles that the exercise of the legislative power has no limitations except by specific declarations in the state and federal constitutions and that the Legislature is presumed to have carefully observed the requirements in the constitution in enacting statutes. *Way v. Grand Lake Ass'n, Inc.,* 1981 OK 70, ¶ 39, 635 P.2d 1010, 1017. When the Legislature has very obviously ignored an unequivocal constitutional prohibition, as in this case, the legal presumption of constitutional obedience rings empty and cannot save the legislation. In my opinion, legislation requiring only a handful of cities to engage in collective bargaining with their employees is special legislation contrary to the provisions of art. 5, § 46.

¶ 9 Article 5, § 46 prohibits the Legislature from reaching down into the city council chambers in a few cities and regulating their labor affairs through a collective-bargaining mandate. Article 5, § 46 is a restraint against the very kind of disparate legislative regulation of cities meted out in the Act. Were I writing for the Court, I would find that art. 5, § 46 classifies municipalities into two groups—cities and towns—and that any legislation attempting to regulate municipal affairs must affect all cities and/or all towns, unless and until the Legislature enacts a general law classifying cities and/or towns based on population for organizational and operational purposes under art. 18, § 1.[4]

¶ 10 The majority opinion and the separate concurring opinion view art. 5, § 46 as authorizing class legislation in the listed subject areas. I do not. In my view, the subject areas specified in art. 5, § 46 are subjects of interest to inhabitants across the state, inhabitants in every town or city or county or school district. They are subjects that are general in nature. Under art. 5, § 46, citizens across the state must be subjected to the same rates of interest, the same procedure to file a mechanics' and materialmen's lien and the same periods of time for tax assessments. Although the differences in the highly-populated and the sparsely-populated areas of this state might present a reasonable basis for classifying localities for some purposes, it is not reasonable to prescribe different rates of interest to be paid by the citizens based on population or different procedures for filing mechanics' and materialmen's liens against the property of citizens based on population or different periods for assessment of property taxes against the citizens based on population. Until today, § 46 prohibited such special legislation. With today's opinion, the Legislature could pass a law requiring adoptions to be filed only in the more populated counties where the services are more available for determining whether an adoption should be approved. The criminal laws, divorce laws, judgment enforcement laws and the rules of evidence, as well as municipal labor laws, are all matters of statewide concern that have no relationship to the population density of a county or municipality.

¶ 11 The Oklahoma Constitution, art. 5, § 59 reads:

**Laws of a general nature shall have a uniform operation throughout the State,** and where a **general law** can be made applicable, no **special law** shall be enacted.

(Emphasis added.)

¶ 12 Both § 46 and § 59 of art. 5 were included in the original Constitution of the State of Oklahoma. While § 46 prohibits the Legislature from passing special laws relating to specific subject areas, § 59 requires the Legislature to give statewide uniform operation to all laws of a general nature. At statehood, the meanings of the terms "special law," "general law" and "law of a general nature" were established.[5] A "law of a gen-

4. The Okla. Const., art. 18, § 1 allows the Legislature to classify municipal corporations according to population by general law. The Legislature has provided by general law that a community with a population of at least 1,000 inhabitants may incorporate as a city, 11 O.S. 2001, § 2–101, and pursuant to the Okla. Const., art. 18, § 3a, the Legislature has provided by general law that a city or town with at least 2000 inhabitants may adopt a charter for its own government. 11 O.S.2001, § 13–101. My research reveals no other general legislative scheme classifying municipal corporations according to population.

5. R.L. Williams, *The Constitution and Enabling Act of the State of Oklahoma Annotated,*

eral nature" related to a subject matter of common interest to the whole state; a "general law" related to a subject matter of common interest to the whole state and embraced the whole subject or a whole class related to the subject; and a "special law" related to particular persons or things of a class. J.G. Sutherland, *Statutes and Statutory Construction*, 148–150 (1891). We should read these constitutional provisions to give effect to the intent of the framers and the people in adopting them. *Boswell v. State*, 1937 OK 727, 74 P.2d 940.

¶ 13 The prototype for art. 5, § 59 was in the Constitution of Kansas, art. 2, § 17, which read: "All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made, no special law shall be enacted." [6] Before it was included in Oklahoma's Constitution, this provision was unique to Kansas. *Rambo v. Larrabee*, 67 Kan. 634, 73 P. 915, 916 (1903).

¶ 14 Our early jurisprudence relied upon Kansas law in deciding whether the Legislature violated art. 5, § 59. *Anderson v. Ritterbusch*, 1908 OK 250, ¶¶ 25–27, 98 P. 1002; *State ex rel Smith v. Brown*, 1909 OK 199, ¶¶ 7–8,103 P. 762. In explaining the uniformity requirement for a law of a general nature, the *Anderson* court, at ¶ 26, quoted *Noffzigger v. McAllister*, 12 Kan. 315 (1873):

... Whenever a law of a general nature is passed by the Legislature for the whole

state, and is not applied by the Legislature to any particular locality thereof, and has no words prohibiting its operation in any particular locality thereof, it is a law having a uniform operation throughout the state, within the meaning of said constitutional provision, although it may not practically have operation in every part of the state.

¶ 15 In construing the Kansas prototype, *Rambo*, 73 P. at 916, explained that the constitutional section was adopted as an injunction against the custom of state legislatures carving out from the body of citizenship special individuals and special classes of individuals to grant them privileges or immunities which should have been accorded to all those of the class to which the favored ones belonged. It was to prevent limited application of laws of a general nature. *Id.* at 918.

¶ 16 *Rambo* held that whether a law is general in its nature is a judicial question and not a legislative question. The courts were to determine the nature of the law by identifying the rights, benefits or immunities it granted and the burdens it imposed and determining whether the state had a common interest in the subject matter. Discussing a similar provision in the Ohio Constitution, *Rambo* observed that the uniform operation requirement for laws of a general nature was adopted to remedy the evil of the Legislature declaring certain acts to be crimes in certain localities but not in others as the legislature

---

(1912)(former Justice of the Oklahoma Supreme Court). Many provisions in the original Oklahoma Constitution had prototypes in other state constitutions. *Id.*, preface. A contemporary political historian observed that the framers of the Oklahoma Constitution searched with great assiduity among the fundamental laws and statutes of all the other states for the latest inventions known to American politics. Charles A. Beard, *The Constitution of Oklahoma*, Pol. Sci. Q., vol. 24, no. 1 (Mar.1909) 95–114, at 95. He further observed that among these new devises was a prohibition against special and local legislation; that the Oklahoma Constitution provided the check of publicity borrowed from Arkansas (art. 5, § 32), *Id.* at 100, and set out a long list of particular subject areas that could not be dealt with in special legislation (art. 5, § 46). *Id.* at 101. In closing, he commented that every important clause of the Oklahoma Constitution had been tried out in the experience of one or more of the older commonwealths. *Id.* at 114.

The concurring opinion, at ¶ 5, reports that both § 46 and § 59 were contained in § 1 of a federal statute applicable to Oklahoma Territory, Act of July 30, 1886, c. 818, 24 Stat. 170. That federal statute, set out in footnote 5 of the concurring opinion, did not contain several of the subject areas specified in § 46 nor did it contain any language requiring statewide uniform operation of laws of a general nature similar to that in § 59. My research indicates that much of § 46 was copied from Missouri and California and all of § 59 was copied from Kansas. *See* Henry G. Snyder, *The Constitution of Oklahoma*, (1908).

6. The people of Kansas have amended this section several times. The language "and in all cases where a general law can be made, no special law shall be enacted" was deleted in 1974. *Stephens v. Snyder Clinic Assoc'n*, 230 Kan. 115, 127, 631 P.2d 222, 232 (1981).

or the electors might decide. *See, Cass v. Dillon,* 2 Ohio St. 607 (1853); *McGill v. The State,* 34 Ohio St. 228 (1877).

¶ 17 The challenged legislation in *Rambo* required the county to provide a transcript to an indigent convicted of murder or manslaughter in any county containing more than 65,000 inhabitants. Inquiring into the nature of the act relating to criminal procedure, *Rambo* found that the subject matter of the act interested all persons in the designated class, no matter where they resided in the state; that every poor, condemned person residing anywhere in the state had an interest in having the conviction reviewed in a higher court; and that no reason could be shown why the public should not afford this right to one residing in a county of 10,000 inhabitants as well as a county of 65,000.

¶ 18 In addition to the Kansas experience, several other states had experience with the uniformity requirement for laws of a general nature upon which the framers of Oklahoma's Constitution likely relied. In his treatise *Statutes and Statutory Construction,* J.G. Sutherland devoted an entire chapter to the requirements of general laws. In the second half of the Nineteenth Century, several state constitutions required statewide uniform operation of laws of a general nature. *Id.* at 144. The provision was intended to require just and equal laws and to prevent, as far as possible, enactments which were not such. *Id.* It was intended to prevent the granting of privileges to any citizens or class of citizens which was not granted to all the citizens upon the same terms. *Id.* at 151. The frequency and inconvenience of local and special legislation in public acts led to the adoption of the uniformity requirement. *Id.* at 147.

¶ 19 Sutherland explained that legislation is not of a general nature because it is a public law;[7] it is general because the subject matter is of common interest to the whole state and the provisions embrace the whole state or a whole class. Sutherland recognized that generic subjects of legislation may be divided. For instance, laws dealing with people may be divided into classes such as voters, sane and insane persons, minors, husband and wife, parents and children. He also explained that the subject of a statute may be general, but if the statute is limited in its scope, it may be a special statute. *Id.* at 151. For instance, fees for local officers is a general subject and extends to every political subdivision in the state, but a statute prescribing fees for particular counties is a special law on a general subject. *Id.* at 152. He further explained that a law on a subject general in nature may operate only upon a class if the class has peculiar characteristics which require exclusive legislation. *Id.* at 162.

¶ 20 Many of these concepts relating to the uniformity requirement were set out in the early case of *Burks v. Walker* in deciding that the Superior Court Act was not contrary to art. 5, § 59:

> In order for a **law to be general in its nature and to have a uniform operation,** it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. **To determine whether or not a statute is general or special, courts will look to the statute to ascertain whether it will operate uniformly upon all the persons and parts of the state that are brought within the relation and circumstances provided by it.** *People ex rel. [Grinnell] v. Hoffman,* 116 Ill. 587, 5 N.E. 596, 8 N.E. 788, 56 Am. Rep. 793; *Nichols v. Walter et al.,* 37 Minn. 264, 33 N.W. 800. **And the operation is uniform if it affects alike all persons in like situation.** But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some *distinctive characteristic* upon which a different treatment may be reasonably founded and that furnish a

---

**7.** A public law is a common-law classification applied to all laws of which the courts take judicial notice, except private laws. Sutherland, at 147.

practical and real basis for discrimination. *Nichols v. Walter, supra.*

(Emphasis added.)

1909 OK 317, ¶ 23, 109 P. 544, 549.

¶ 21 Faced with the task of bringing Oklahoma Territory and Indian Territory together as a single governmental entity, the framers of our constitution, undoubtedly, wanted to prevent legislation that would grant privileges to some persons but not others in the same circumstances or conditions. Article 5, § 59 was designed to require uniform operation of a law of a general nature upon all the interested persons throughout the state. *Reynolds, supra.*

¶ 22 The majority opinion applies the two-prong reasonable basis/rational relation test for uniform operation of a law of general nature to test the Act for conformity with art. 5, § 46. As to the first prong, the majority opinion finds that the evidence showing the differences between larger cities and smaller cities establishes a reasonable basis for the legislative classification. As to the second prong, the majority opinion offers a bare conclusion that the 35,000–population classification is closely related to the Act's objective without any supporting analysis or reasoning. As to art. 5, § 59, the majority opinion concludes the Act has uniform operation throughout the state because it applies to all eleven cities that have more than 35,000 inhabitants.

¶ 23 The majority opinion correctly recognizes that the key to a legitimate legislative classification is whether it embraces all of the given class. However, the opinion fails to identify the class that is the actual object of the legislation. An appropriate analysis of a legislative classification examines the persons, things or places that benefit from the legislation. *Hudgins v. Foster*, 1928 OK 243, ¶ 30, 267 P. 645, 649. Even though the Act classifies cities based on population, the stated object and purpose of the legislation is to benefit municipal employees by granting them the right to bargain collectively:

> The Legislature of the State of Oklahoma declares that it is the public policy of this state and the purpose of the Legislature in the enactment of this act to promote orderly and constructive employment relations between municipal employers and their employees, to increase the efficiency of state and local government throughout the state, and to ensure the health and safety of the citizens of this state. The Legislature has determined that these policies and purposes may best be accomplished by:
>
> 1. Granting to municipal employees the right to associate with others in organizing and choosing representatives for the purpose of collective bargaining;
>
> 2. Requiring municipal employers to recognize, negotiate and bargain with employee organizations representing municipal employees and to enter into written agreements evidencing the result of bargaining; and
>
> 3. Encouraging labor peace through the establishment of standards and procedures which protect the rights of the municipal employer, the municipal employee and the citizens of the state.

11 O.S.Supp.2004, § 51–201.

¶ 24 The express purposes of the Act relate to the need to encourage labor peace and prevent labor strikes in all municipalities in the state. The persons to benefit under the Act are non-uniform municipal employees. But without explanation, the Act embraces only some members within the entire class of non-uniform municipal employees. The majority opinion does not articulate how collective bargaining for some but not all of the state's municipal employees is reasonably related to the object and purposes of the Act. It fails to analyze the legitimacy of the classification of municipal employees based solely on population. *See, Elias v. City of Tulsa*, 1965 OK 164, ¶¶ 15–18, 408 P.2d 517, 520–521 (explaining that when the act itself discloses that the classification by population includes some but excludes others in the same or similar situation, it does not embrace all of the class that should naturally be embraced; it is a special law rested on a false or deficient classification that creates preference and inequality; and the classification may be a subterfuge designed to give the legislation an appearance of general law).

¶ 25 The inquiry should not be whether large municipalities are different from small municipalities as set out in the majority opinion. The proper question is whether the Legislature is prohibited from granting privileges to the public works employees of a city of 36,000 population but not granting the same privileges to the public works employees of a city of 34,000 population. This question requires this Court to determine whether there are distinctive characteristics between the public works employees of cities with more than 35,000 populations and the public works employees of cities with less than 35,000 populations.

¶ 26 There are no distinct differences between public works employees in some cities and public works employees in other cities, and legislation providing different treatment of public works employees based solely on population is constitutionally offensive. This Court said much the same in *Maule v. Indep. Sch. Dist. No. 9 of Tulsa County*, 1985 OK 110, ¶ 13, 714 P.2d 198, 204, when it concluded that "[d]iscrimination between teachers employed by school districts based solely on population offends art. 5 § 46." (Emphasis added.) The majority opinion tacitly overrules *Maule* in this regard.

¶ 27 The majority opinion declares that the Act addresses an important "statewide concern" that will promote orderly and constructive employment relations between municipal employers and their employees. And then the majority opinion *inexplicably* turns that "statewide concern" and the promotion of constructive employment into a matter for only *eleven* cities in our state. How can a "statewide concern" be legitimately granted to the employees of *only eleven* cities?

¶ 28 Collective bargaining for non-uniform municipal employees is truly a "statewide concern," as the majority opinion recognizes, and the Act should apply to all cities. Over the years the legislature has granted collective bargaining rights to policemen, firemen and teachers.[8] In each instance, those labor rights were conferred on these groups of public employees on a *statewide* basis and

without regard to population or layers of personnel management. With the stated purpose and object of the legislation, the Act should embrace all non-uniform municipal employees or none of them. Population has absolutely no relation to the subject matter or the stated purpose and object of the Act.

¶ 29 The Act before us is a special law because it only applies to a *small number* of the state's non-uniform municipal employees and a *small number* of cities. The Act should be declared unconstitutional because it attempts to regulate the labor affairs of only a few cities. The Act should be declared unconstitutional because the population-based classification of cities is not reasonably related to the express purposes of the Act "to promote orderly and constructive employment relations between municipal employers and their employees, to increase the efficiency of state and local government throughout the state, and to ensure the health and safety of the citizens of this state." The Act simply cannot promote constructive employment relations, efficient local government and citizen health and safety throughout the state because it affects only eleven cities in Oklahoma. The population-based classification of municipalities in the Act destroys rather than accomplishes the intended statewide labor peace and citizen health and safety.

¶ 30 In upholding the Oklahoma Municipal Employees Collective Bargaining Act and its selective operation upon eleven cities in the state, the majority opinion eviscerates the two-prong reasonable basis/rational relation test of classification developed under art. 5, § 59, adopts a single-prong reasonableness test and then liberally applies the reasonableness test for compliance with art. 5, § 46. Today's opinion renders art. 5, § 59 ineffective and envelopes § 46 into an ineffective § 59. Today's opinion approves of the very legislative mischief that the constitutional framers attempted to prevent—disparate treatment of the people of this state in regard to the general subjects listed in art. 5,

---

8. Political subdivisions throughout the state, including cities, towns and school districts, are included in the collective bargaining statutes for

firefighters and police officers, 11 O.S.2001, §§ 51–101, *et seq.*, and school employees, 70 O.S.2001, §§ 509.1, *et seq.*

§ 46 and disparate operation of a law of a general nature. I respectfully dissent.